FREDERICK J. PUTNAM *vs.* GEORGIA D. PUTNAM.

Worcester.    May 13, 1976. — January 6, 1977.

Present: HALE, C.J., GRANT, & ARMSTRONG, JJ.

*Divorce,* Division of property.

A probate judge's report of material facts did not furnish an adequate
    basis for a decree which assigned the net proceeds of the sale of the
    divorced parties' marital home, held by them as tenants by the
    entirety, where the findings did not make out a case for alimony
    and lacked the comprehensiveness necessary to support an equitable
    division of property.  [12-17]

---

LIBEL for divorce filed in the Probate Court for the county of Worcester on December 2, 1974.

A motion seeking conveyance of real estate was heard by *Conlin,* J.

The case was submitted on briefs.

*Roy S. Mier* for the libellee.

*Arnold W. Olsson* for the libellant.

ARMSTRONG, J.  On March 14, 1975, a probate judge (first judge) entered a decree nisi of divorce for the libellant (husband) on the ground of cruel and abusive treatment. The divorce is not at issue; the decree has since become absolute. G. L. c. 208, § 21 (as amended through St. 1934, c. 181, § 1). *Scholz* v. *Scholz,* 367 Mass. 143 (1975). See now Mass.R.Dom.Rel.P. 62 (g) (1975). The decree nisi made no provision for support or property division in lieu thereof, but expressly "reserved" those matters "for future determination." On March 26, 1975, another probate judge (second judge) ordered the insertion of an "addendum" in the decree nisi previously entered which ordered that the parties' marital home, held by them as tenants by the entirety, be sold and that the net proceeds of the sale be divided between the husband and the libellee (wife), in the proportions of two thirds and one third, respectively. The wife appeals from the order entering the "addendum".[1] The appeal is before us on a statutory re-

---

[1] The full text of the "addendum" is as follows: "It is ordered, after hearing, that the libellee [i.e., the wife] shall have the use of the property until June 30, 1975, at which time the real estate shall be sold and after the payment of the balance of $2,000.00 loan to the mother of the libellant [i.e., the husband], the net proceeds shall be divided as follows: two-thirds to the libellant and one-third to the libellee; that the libellee shall allow prospective buyers to view the real estate from this day on. If a buyer is not found by June 30, 1975, or if the parties cannot agree on a fair market price, the Court will appoint an auctioneer to sell said real estate at the request of either party." While the arguments advanced in the wife's brief on appeal are confined to the merits, we note in passing that it was irregular for the second judge to enter the property order as an "addendum" to the existing decree nisi. He should instead have entered a separate decree. See *Wyman* v. *Wyman,* 3 Mass. App. Ct. 358, 359, fn. 2 (1975), and cases cited. We also note that the judge entered the decree on the basis

port of material facts and a transcript of the evidence heard by the second judge. The wife contends that apportionment of the net proceeds ordered by him was not supported by the facts found or by the evidence.[2]

The report of material facts contains findings to the following effect. The parties were married on June 13, 1969, and separated in October, 1974. There are no children of the marriage. The husband has children by a former marriage towards whose support he makes monthly payments of $200. The wife has a son by a prior marriage living with her. The house in question was acquired by the parties as tenants by the entirety after their marriage for a purchase price of $19,750, consisting of a bank loan for which both parties are liable, secured by a mortgage, in the amount of $13,250, and a cash contribution by the husband of the remainder. The parties thereafter made various improvements on the premises which were financed by (a) a $5,000 loan obtained by the wife for which she alone is liable, (b) a $2,000 "personal loan" obtained by the husband (possibly the loan from his mother referred to in the "addendum" set out in fn. 1, *supra*) for which he alone is liable, (c) a $2,500 loan for which both parties are liable, and (d) a $10,000 cash contribution by the husband. Both parties also contributed time and physical effort to renovating the house. From 1969 to 1974 the husband and the wife received total taxable incomes in the respective amounts of $33,525.93 and $31,880.69. In addition, apparently because of an industrial accident, the husband received nontaxable monthly payments of $200 for an undis-

(apparently) of a motion filed by the husband in the divorce proceeding a month before the decree nisi was entered. No contention is made that this was improper or that a separate petition should have been filed. Compare G. L. c. 208, § 34 (as appearing in St. 1974, c. 565); *Chadbourne* v. *Chadbourne,* 245 Mass. 383 (1923). See also *Baird* v. *Baird,* 311 Mass. 329, 333-334 (1942).

[2] No other issue is raised in her brief. We therefore do not consider the propriety of those portions of the "addendum" directing "payment of the balance of $2,000.00 loan to the mother of the libellant" (there being no evidence of any such loan) and providing for the appointment of an auctioneer in a proceeding of this kind.

closed period in 1970 (and perhaps 1971), and a lump-sum workmen's compensation award of $20,000 in 1971. The wife is now living with a teenage boy "whom she loves."

Those findings are (with the exception of minor discrepancies in the figures) supported by the evidence. We also learn from uncontroverted testimony in the transcript that the husband and the wife are both in their middle thirties, that he is employed as a truckdriver and she in some undisclosed capacity at an electric company, and that he has an artificial leg as a result of his industrial accident (which, however, does not appear to have incapacitated him permanently or affected his employability).

The wife argues that those facts are insufficient in law to justify the judge's apportionment of the proceeds between the parties, which amounted arithmetically to an award of one third of what otherwise would have been her share to the husband. She bases her argument principally on *Ober* v. *Ober*, 1 Mass. App. Ct. 32 (1973), and the line of similar cases following *Topor* v. *Topor*, 287 Mass. 473 (1934), in holding that decrees ordering transfers of property under G. L. c. 208, § 34 (as appearing in the Tercentenary Edition), must be justified, if at all, on a theory of support in accordance with traditional alimony concepts and not on a theory of equitable division of the property of the partners to the marriage. These cases antedated St. 1974, c. 565, which rewrote G. L. c. 208, § 34.[3] After this case was briefed and argued, the Supreme Judicial Court held in *Bianco* v. *Bianco*, 371 Mass. 420 (1976), that the 1974 amendment has conferred such a power of equitable division on the Probate Courts.[4] It follows that

---

[3] A subsequent amendment to § 34 (St. 1975, c. 400, § 33), simply conformed terminology to the Massachusetts Rules of Civil Procedure.

[4] The 1974 Amendment was apparently modeled on the Uniform Marriage and Divorce Act, § 307, Alternative A (see Inker, Walsh and Perocchi, Alimony and Assignment of Property: The New Statutory Scheme in Massachusetts, 10 Suffolk U. L. Rev. 1, 5 & fn. 15 [1975] [hereinafter Inker et al.]), but it omits the explicit reference to equitable division which appears in the model act ("In a proceeding for dissolution of a marriage ... the court ... shall ... finally equitably apportion between the parties the property and assets belonging to

the main thrust of the wife's argument fails and that the disposition of the proceeds of the sale of the marital home may be sustained as an equitable division if it accords with the criteria applicable to equitable divisions under the provisions of the new statute.

The third sentence of the new statute sets out fourteen factors which the judge "shall" consider in making an award either of alimony or of property. They are "the length of the marriage, the conduct of the parties during the marriage, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income." The listed factors are reflective of alimony practice under § 34 before the 1974 amendment. See *Topor* v. *Topor, supra,* at 475; *Coe* v. *Coe,* 313 Mass. 232, 235-236 (1943); *Wilson* v. *Wilson,* 329 Mass. 208, 211 (1952), and cases cited; *Hillery* v. *Hillery,* 342 Mass. 371, 372-373 (1961); *Verdone* v. *Verdone,* 346 Mass. 263, 264-265 (1963); *Ober* v. *Ober, supra,* at 35; *Roberts* v. *Roberts,* 3 Mass. App. Ct. 789 (1975). The fourth sentence states that the judge "may" take into consideration "the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates." This factor, not previously weighted even in suits to determine title to the marital property (see Inker et al., *supra,* at 5, fn. 14), will give Probate Courts a measure of flexibility in the restoration of parties to the status quo ante, a disposition which often makes eminent sense in marriages of short duration but was previously difficult to sustain on appeal except by means of circuitous logic (see, e.g., *D'Amico* v. *D'Amico,* 1 Mass. App. Ct. 561, 563, fn. 1 [1973]), and in apportioning equitably property accumu-

---

either or both . . ."). The *Bianco* case held (371 Mass. at 422, fn. 2) that such a power was implicit in the language of the second sentence of the amended § 34 ("In addition to or in lieu of an order to pay alimony, the court may assign to either the husband or the wife all or any part of the estate of the other").

lated during the marriage regardless of which spouse holds title.[5]

It should not be assumed, however, that the new statute has given Probate Courts unlimited and uncontrolled discretion in dividing the assets of the spouses between them. An equitable division must be grounded in the respective contributions of the spouses.[6] Property concepts have not become immaterial. It is important that a decision to award alimony or divide property demonstrate consideration of the factors enumerated in G. L. c. 208, § 34 (*Bianco* v. *Bianco, supra,* at 422-423), and that it make apparent the rationale underlying the decision. It is difficult to conceive of a situation in which a decision awarding property of one spouse to the other will be sustained on appeal if it is not supported by traditional alimony considerations or by findings relative to the respective contributions of the parties in accordance with the fourth sentence of § 34.[7] In particular, we caution against the

---

[5] Inker et al. pose the example of a long marriage in which the parties have amassed substantial assets, all of which stand in the name of the husband, but have lived so frugally that the alimony likely to be awarded the wife to sustain her mode of living and station in life will be minimal. Inker et al., *supra,* at 7-8.

[6] "[I]t is important that the courts do not blur the distinction between alimony and property division. Alimony is an award for support and maintenance . . . . Property division, on the other hand, is based on the joint contribution of the spouses to the marital enterprise." Inker et al., *supra,* at 11.

[7] This case was tried prior to July 1, 1975, and therefore the second judge was required by G. L. c. 215, § 11, as in effect prior to St. 1975, c. 400, § 58, to report the material facts on which his decision was based. Rule 52(a) of the Massachusetts Rules of Domestic Relations Procedure (1975) has relieved probate judges of the obligation, in cases subject to those rules, to make findings at the request of a party unless the appointment of a stenographer was timely requested under Rule 202 of the Probate Courts (1975), and unless the party has asked for such findings prior to final arguments. The fact that a party may not be entitled as of right to findings does not, of course, preclude an appellate court from remanding a case for the purpose of having the judge set out his findings; and such a course may well be indicated by the strong admonition in *Bianco* v. *Bianco,* 371 Mass. at 423, that a probate judge, in future decisions under G. L. c. 208, § 34, should set forth the findings which underlie his decision.

view that either alimony or a transfer of property may be justified purely on the basis of the blameworthy conduct of one of the spouses. *Topor* v. *Topor*, 287 Mass. at 476.[8] See Inker et al., *supra*, at 19, fn. 98.

Applying these principles to the present case, we conclude that the judge's report of material facts does not furnish an adequate basis for a decree which, in effect, assigns to the husband a portion of the estate of the wife. The findings do not make out a case for alimony; the husband is not shown to be in need of support; we are told of no resources or debts of the parties not already mentioned; and the earning capacity of the husband appears to be substantially in excess of the wife's. The judge's findings relative to contributions of the parties towards the house do, it is true, suggest the possibility that the apportionment may be based on the husband's having contributed roughly two thirds of the costs or acquisition and renovation,[9] but we are reluctant to affirm the decree on that basis for two reasons. First, we are not told, but can only guess, that this may have been the rationale. Contrast *Bianco* v. *Bianco*, at 423. We could equally well assume that the apportionment is predicated on the finding relative to the wife's conduct. Second, the contributions of the spouses to the house should not be considered in isolation

---

[8] Such conduct by one of the spouses may of course be grounds, as matter of discretion, for reducing or refusing an award of alimony to that spouse. *Graves* v. *Graves,* 108 Mass. 314, 317-318 (1871). *Topor* v. *Topor,* 287 Mass. at 476. *O'Brien* v. *O'Brien,* 325 Mass. 573, 577-578 (1950). *Miller* v. *Miller,* 366 Mass. (1974). The implication of the third sentence of § 34 is that the blameworthy conduct of a spouse may be considered as a factor affecting in a similar manner an award to that spouse of property which might otherwise be warranted by considerations of that spouse's contribution.

[9] The husband's contributions as found (exclusive of the $2,000 personal loan from his mother which is to be repaid from the proceeds of the sale) would total $24,375 ($6,500 for down payment, $10,000 for improvements, and one-half of the total of the mortgage loan [$13,250] and the other joint loan [$2,500], or $7,875); the wife's contributions would total $12,875 ($5,000 loan on which she alone is liable, and the other half of the total of the two joint loans, or $7,875). This computation does not, of course, take account of contributions towards the payments on the joint loans, before or after the entry of the decree.

from the total contributions of the spouses towards all marital expenditures, whether current or capital — a proposition which should be obvious if one considers the example of two spouses of equal income, one of whom pays for all current expenses and the other for all capital expenses.[10] The concept of property assignment or equitable division under G. L. c. 208, § 34, must be read to apply in a broad sense to the value of all contributions of the respective spouses towards the marital enterprise; it contemplates something more than determining which spouse's money purchased a particular asset. An order for equitable division should normally encompass all substantial assets jointly owned and any separate property representing accretion during the marriage and should be based on a comprehensive analysis of all major elements of contribution by the spouses during the marriage. An equitable division should not be ordered in a case where the evidence introduced by the parties does not warrant findings comprehensive of those factors. *Rothman* v. *Rothman,* 65 N.J. 219, 232-233 (1974).

The findings in the present case do not meet this test. Although they show, roughly, the total earnings of the spouses, and indicate that they were deposited in a joint bank account, we are left uninformed as to what became of those earnings thereafter and to the identity of other major assets of the parties, if any. No mention is made of who will pay off any remaining liability under the mortgage note. We feel that the findings lack the comprehensiveness necessary to support an equitable division of property, and in any event are wanting in that the rationale for the division does not appear either explicitly or by clear implication. Accordingly, the decree ordering the insertion of the "addendum" in the decree nisi is reversed.

---

[10] *Thompson* v. *Thompson,* 30 Colo. App. 57, 59-60 (1971). Nor should the concept of "contribution" be limited to financial contribution; otherwise a wife who diligently runs the home and raises the children will be at a distinct legal disadvantage when contrasted with a working wife. The point is made strongly in Inker et al., *supra,* at 3-4 and 7-8.

The case is remanded to the Probate Court for further proceedings in accordance with the principles stated in this opinion.

*So ordered.*