**In re Norman A. DAVIAU, Bankrupt.**

**Barbara DAVIAU, Plaintiff,**

**v.**

**Norman A. DAVIAU, Defendant.**

**Bankruptcy No. 4-80-00565-G.**
**Adv. No. 4-80-0159-G.**

United States Bankruptcy Court,
D. Massachusetts.

Jan. 13, 1982.

Richard Courtney, Worcester, Mass., for plaintiff.

William Y. Chaika, Cranston, R. I., for defendant.

## MEMORANDUM AND ORDER ON COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT

PAUL W. GLENNON, Bankruptcy Judge.

This matter is before the court upon the complaint of Barbara Daviau to have a debt owed to her excepted from the effect of a discharge in bankruptcy under § 523(a)(5) of the Bankruptcy Code. 11 U.S.C. § 523, as amended. Mrs. Daviau, having obtained a decree of divorce from a Massachusetts Probate Court, claims that the Probate Court's order for Mr. Daviau to pay to her $50 per week for 52 consecutive weeks was in the nature of an alimony award, for her support and maintenance, and not a property settlement as claimed by Mr. Daviau.

### FACTS

On January 14, 1980, Barbara Daviau was granted a divorce nisi by the Probate Court in Worcester, Massachusetts. In that decree, the court ordered as follows:

... that the defendant shall pay the sum of fifty dollars each and every week for fifty-two consecutive weeks; defendant shall transfer to the plaintiff all his right, title and interest in and to the property [description of the marital home is omitted].

On September 2, 1980, Norman Daviau filed his petition for bankruptcy, and Order for Relief was entered. On October 14, 1980, the plaintiff filed the instant complaint.

The dispute is over the exact nature of the award by the state court of $50 per week for 52 weeks, the plaintiff arguing that the award was for alimony, while the defendant alleges it was part of an overall property settlement. To the end of clarifying the award, this court requested the state court to review its order of January 14, 1980 and to clarify the basis of its own order. On February 26, 1981, the Probate Court ordered as follows:

... that the Judgment of Divorce Nisi dated January 14, 1980 be clarified to reflect the Court's intent that the $50.00 per week for 52 consecutive weeks was alimony for the plaintiff, Barbara Daviau to be paid by the defendant, her husband, Norman Daviau.

The plaintiff argues that the Probate Court's clarification order of February 26, 1981 makes clear that the payment of $50 per week by the defendant was an award of alimony, bringing it within the exception to discharge of § 523(a)(5). The defendant, through a representation of counsel who alleges that he was present at a bench conference with the probate judge at the time of the clarification hearing, argues that the probate judge stated that after reviewing his records and notes of the divorce hearing, he was sure that the pay-

ments were "for alimony and not for support and maintenance" because his notes showed no sign of inquiry into Mrs. Daviau's work record, no children of the marriage, and the fact that payments were for a definite period of 52 weeks, and not for an indefinite amount of time. On the basis of this qualifying language, the defendant argues that if the award was not for Mrs. Daviau's support, it must have been part of an overall property settlement between the parties.

Certain other facts appear which bear upon this court's decision and which appear to be uncontroverted. First, Mrs. Daviau encountered emotional difficulties after her separation from her husband, has been under psychiatric care since September, 1979, and was not able to work from that time until very recently. It is disputed whether the Probate Court was aware of that fact at the time of the divorce hearing. The defendant-debtor, Mr. Daviau, was also unemployed at the time of the divorce hearing and it is not clear whether the Probate Court was made aware of this fact, although Mr. Daviau indicated that the court was not aware. Secondly, the testimony indicates that the marital home was formerly owned by Mrs. Daviau and her previous husband in some sort of joint arrangement, but that the previous husband's interest was purchased by Mrs. Daviau, then transferred to Mr. Daviau, for a sum of $500. Mr. Daviau then borrowed approximately $7000 to repair the home, that debt being secured by a lien on the home.

Mr. Daviau testified that at the time of the divorce hearing he had a discussion with his attorney regarding a settlement of the divorce, and that he understood the agreement to be that in return for his not contesting the divorce petition and his transferring his interest in the house to his wife, she in turn would waive alimony payments and would sell the house to pay all liens against it. However, he gave no indication that this settlement agreement was discussed between himself and Mrs. Daviau or her attorney, nor was it committed to writing; and finally, it does not appear that the Probate Court was ever told of any settlement between the parties, and the divorce decree contains no such reference.

## DISCUSSION

■ Section 523(a) of the Bankruptcy Code, 11 U.S.C. § 523(a) (as amended), provides which debts may be excepted from a discharge in bankruptcy. It states, in pertinent part:

(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

\* \* \* \* \* \*

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support for such spouse or child, in connection with a separation agreement, divorce decree, or property settlement agreement, but not to the extent that—

\* \* \* \* \* \*

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance or support. 11 U.S.C. § 523(a)(5)(B)

Thus, it is clear that though a debt be designated alimony, the exception to discharge will not operate unless the liability is actually in the nature of alimony. Further, the legislative history makes it clear that what constitutes alimony, maintenance, or support, will be determined under the bankruptcy laws, not state law. H.R. No.95–595, 95th Cong., 1st Sess. (1977) 363; S.R.No.95–589, 95th Cong., 2nd Sess. (1978) 77–79, U.S.Code Cong. & Admin.News 1978, p. 5787. The nature of the bankruptcy court's inquiry was well-stated in *In re Ingram*, 5 B.R. 232 (Bkrtcy.N.D.Ga.1980):

The intention of the parties must be ascertained. The language of decree must be analyzed to determine whether payments were intended to provide maintenance and support of the spouse or were intended to divide marital property. Because the appellation assigned to the payment is not determinative of this issue, the court may consider matters out-

side of the divorce decree in order to uncover any ambiguities which may exist in the language thereof. [citations omitted] *Id.* at 234.

Thus, it is incumbent upon the bankruptcy court to look beyond the "four corners of the divorce decree", to look behind the state court's written designations, and to ascertain the actual nature of the award.

■ Bankruptcy Rule 407 places the burden of proving that the obligations imposed by the divorce decree are in the nature of alimony payments upon the party objecting to discharge, namely Mrs. Daviau. However, after the objecting spouse makes a *prima facie* case, it is incumbent upon the debtor, Mr. Daviau, to show that he is entitled to a discharge of the disputed debt. *In re Smith*, 436 F.Supp. 469 (N.D.Ga.1977).

In *Ingram*, the wife had terminated her employment upon marriage and later became disabled. The court further found that there was a large disparity in income at the time of the divorce. Because it was unable to clearly ascertain the intention of the parties from testimony, the court in *Ingram* looked to the divorce decree and tried to infer intent from its language. The decree provided, "as a property division of the properties jointly owned", the husband was to pay $25 per week for 156 weeks, the wife was to convey all her interest in and to the marital residence subject to the mortgage, and the husband was ordered to pay mortgage payments as they became due.

■ The *Ingram* court listed five factors in its analysis: (1) the label given to the award by the state court, (2) the context of the disputed provision in the decree, (3) whether the obligation terminates on the death or remarriage of the recipient spouse, (4) whether the obligation terminates upon the death of the donor spouse, and (5) whether the disputed payment appears to balance disparate incomes. Based on these factors, the court found that the overall character of the award of $25/week for 156 weeks was in the nature of a property settlement because of the label in the decree, the fact that there was no provision for the obligation to terminate upon death,

and principally because the payments ordered appeared in the decree in a context that suggests that they were to be compensation for the wife's transfer of her property interest in the marital home.

In *In re Allen*, 4 B.R. 617, 6 B.C.D. 576 (Bkrtcy.E.D.Tenn.1980), the bankruptcy court found that a provision in a divorce decree that entitled the wife to payments of $50 per week was in fact an award of alimony, maintenance and support, where the former wife was 53 years old at the time of the divorce, had been an invalid for 3 years prior to the divorce, and her only income consisted of $360 per month from social security.

In the case at bar, Massachusetts law provides that Probate Courts have the power of equitable division of the property of the partners to the marriage, and therefore, decrees ordering transfers of property no longer need be justified on the need for support in accordance with traditional alimony concepts. M.G.L., c. 208, § 34; *Putnam v. Putnam*, 5 Mass.App. 10, 358 N.E.2d 837 (1977), later appeal, 7 Mass.App. 672, 389 N.E.2d 777 (1977). Thus, after divorce, either alimony or a portion of the estate of either spouse may be awarded to the other. However, the Probate Court also has the power to order a husband to convey his interest in real property as alimony for support of the wife, *Topalis v. Topalis*, 2 Mass.App. 530, 316 N.E.2d 765 (1974), or a judge can order the conveyance of real property in lieu of alimony, *Ricciardelli v. Ricciardelli*, 4 Mass.App.Ct. 114, 343 N.E.2d 433 (1976). The question, then, is what was it that the Probate Court intended by its divorce decree in this case? Its clarification is not determinative since it is merely labelling its decree rather than explaining the motives behind the decree. Nor is the statement of counsel for the debtor of any help, since the Code makes no distinction between awards of alimony and awards of support, but rather, distinguishes alimony awards and property divisions. Finally, since Massachusetts courts may now award alimony without regard to support needs, it becomes incumbent on this court to deter-

mine as best it can the nature of the award in this case.

One of the distinguishing features between the *Ingram* decision and the *Allen* case was the fact that, in the former the wife was ordered to transfer some property in return for the receipt of weekly payments, which suggests of a property settlement, while in the latter case, the order was directed solely to the husband on behalf of a disabled and disadvantaged wife. In our case, the facts suggested by the plaintiff would clearly support an argument that this award was actually in the nature of a traditional alimony award, i.e. one which is for the wife's support and maintenance. Where the ex-wife of a defendant-debtor introduces evidence that, at the time of her divorce hearing she was unemployed, was under a doctor's care, and was unable to work for approximately one year, and the Probate Court's divorce decree provided for weekly payments by the husband to the wife for 52 weeks, I find that a *prima facie* case for the non-dischargeability of the debt has been made. Upon these facts alone, the court could properly find that an award of alimony was not in the nature of a property division, but rather one for the support and maintenance of the wife.

Having thus found that the plaintiff has established a *prima facie* case for non-dischargeability, the burden then falls upon the debtor to establish his continuing right to a discharge of the obligation. In the case before me, there is no indication of any property settlement other than the debtor's unsupported testimony that he and his attorney had a discussion about same. There is no indication that such a property settlement was discussed with Mrs. Daviau, much less agreed to and formalized in a divorce decree. Moreover, the decree itself is not of the general character of a property division, since by its terms it makes no provision for the husband. Finally, to the extent that it may be useful, the Probate Court stated its intention that the award was one for alimony. It is possible that the Probate Court confused the language "maintenance and support" as referring to the children of the marriage (of which there were none) since that language is generally used for awards of child support and not alimony. Nevertheless, considering all the factors pertinent to this decision, the court concludes that the plaintiff has met her burden of proof and that the defendant has not. As such, and in light of all the circumstances, it is my conclusion that the debt in question was in the nature of alimony and is excepted from discharge under § ·523(a)(5).

Finally, the plaintiff in her complaint prayed for judgment in the amount of $19,-000. Since the facts established at trial show that 50 of the 52 weekly payments remain unpaid, a balance of $2500 exists which may be excepted from a discharge. Further, the divorce decree in no way speaks of attorney's fees, and the Court has not been cited to any law which would authorize their recovery in this instance. Therefore, judgment is rendered in favor of Barbara Daviau and Norman Daviau's debt of $2500 to her shall be excepted from the effect of discharge.