## MARY DOE *vs.* JOHN DOE[1]
### (and a companion case).

Middlesex. April 20, 1983. — August 9, 1983.

Present: GREANEY, CUTTER, & PERRETTA, JJ.

*Divorce and Separation,* Custody of child, Division of property, Child support.

Conflict between the parties in a divorce action did not preclude an award of joint custody of their minor son where the record demonstrated that the conflict concerned the relationship of the parties with each other and did not involve disagreement regarding the son's care, custody, and upbringing. [500-503]

Evidence in a divorce action warranted an award of joint custody of their minor son to the parties despite a homosexual relationship between the wife and a woman living with her. [503-504]

In the circumstances, the judge in a divorce action erred by requiring the husband to pay to the wife an amount far greater than the value of the parties' equity in the marital residence in return for the wife's conveyance of her interest in that property to the husband. [504-507]

There was no merit to a contention by the husband in a divorce action that the judge erred in assessing child support to the wife without regard to the financial resources of a woman living with the wife, with whom she was engaged in a homosexual relationship. [507]

A claim by the husband on appeal from divorce judgments that reversal was required because the six-day trial was conducted over a one-month period was frivolous. [507]

COMPLAINTS for divorce filed in the Middlesex Division of the Probate and Family Court Department on July 1 and July 2, 1980, respectively.

The cases were heard by *Sweeney,* J.

*Edward M. Mahlowitz* for John Doe.

---

[1] As a matter of discretion and for reasons which will become apparent, we have refrained from revealing the identities of the parties and their child.

*Gale L. Glazer* for Mary Doe.

PERRETTA, J.  On cross complaints for divorce, a Probate
Court entered identical judgments awarding the parties
joint legal and physical custody of their child and ordered
the wife to release all her interest in the marital residence in
exchange for payment by the husband of an amount of
money which exceeded the parties' equity in that property.
On the husband's appeal, we reverse that portion of the
judgments pertaining to a division of the marital residence,
but affirm the remainder and remand the cases for further
proceedings.

1. *Custody.*

The husband challenges the trial judge's conclusions of
law but not his findings of fact as they relate to the question
of custody of the parties' son, whom we shall refer to as
David.  We relate the facts as found by the trial judge and
as supplemented by undisputed portions of the testimony
and exhibits.

In March, 1978, marital tension between the parties be-
came unbearable.  Because the husband refused to vacate
the marital home, the wife chose to leave, taking David
with her and moving into an apartment in another city.
David, almost six years old, continued to attend the same
school located in the district of the marital residence.

At this time, the husband and the wife entered into an
agreement that until David attained nine years of age, he
would spend three weeks with the wife and two weeks with
the husband, with weekends to the parent with whom he
had not spent the week.  Upon David's attainment of nine
years of age, the provisions of the agreement were to change
somewhat, but the thrust remained essentially the same —
David was to spend basically equal amounts of time with
each of his parents.  It was also agreed that David would
complete the academic year at the school he was then at-
tending but would thereafter be enrolled at a school which
was located equidistant from the parties' residences.

In 1979, another woman moved in with the wife, and
they have a homosexual relationship to which the wife stip-

ulated at the time of trial. She further acknowledged that she intends to continue her involvement with this woman.

The husband brought a complaint for divorce in 1980, and he sought sole custody of David; on her cross complaint, the wife requested joint custody. A temporary custody order was entered at this time incorporating a stipulation of the parents whereby both would have legal custody of David, but physical custody was granted to the husband during the week and then to the wife on two out of every three weekends. A child psychiatrist was appointed as a guardian ad litem. Temporary orders relating to David's custody were twice thereafter entered. All of these orders provided for joint legal custody of David, physical custody to the husband with liberal amounts of time with David to the wife. The critical point to be comprehended from these orders, as well as the testimony at trial, is that David has resided with his mother while she has been involved in a homosexual relationship.

The trial judge visited the parties' home and spoke with David, almost ten years old at the time of trial. Like the guardian ad litem who had interviewed David, the trial judge found that David is a "verbal, intelligent young man who knows what he wants and has the ability to articulate the same. He would prefer to live with both parents under one roof, but if that is not possible, he would like to live with both parents separately." The trial judge further found the husband and the wife to be good parents. As to the wife, he found that she is a "warm loving person who has good parenting skills." David "obviously loves his mother very much and feels very comfortable in her home. He also seems to interact well with the wife's roommate." The husband, the trial judge found, is a "very concerned parent . . . [who] has worked arduously to provide [David] with a good home and upbringing . . . he is a good parent." Judgments were then entered which awarded the parties joint legal and physical custody of David.

The husband argues that because conflict exists between him and the wife, joint legal and physical custody of David

is not in David's best interests. The argument continues that since joint custody is contrary to the child's best interests and since the wife "leads a deviant lifestyle," sole legal and physical custody of David must be placed with the husband, visitation to the wife.

Custody of David must be determined in accordance with G. L. c. 208, § 31, as amended through St. 1982, c. 252, which provides in pertinent part: "In making an order or judgment relating to the custody of children . . . the rights of the parents shall, in the absence of misconduct, be held to be equal, and the happiness and welfare of the children shall determine their custody or possession. When considering the happiness and welfare of the children, the court may consider whether or not the child's present or past living conditions adversely affect his physical, mental, moral or emotional health when making an order or judgment relative to the custody of said child."

In contending that the conflict between the parties precludes an award of joint custody, the husband relies upon *Rolde* v. *Rolde,* 12 Mass. App. Ct. 398, 404 (1981), where the court agreed with the trial judge's observation that "in order for joint custody or shared responsibility to work, both parents must be able mutually 'to agree on the basic issues in child rearing and want to cooperate in making decisions for [their] children.'"

Much to the credit of the present parties, the evidence demonstrates that the husband and the wife do share mutual desires and concerns relative to David's welfare and happiness. While conflict between the parties does in fact exist, the record before us identifies that conflict as concerning the relationship of the husband and the wife with each other and their inability to communicate. It does not involve specific areas of disagreement regarding David's care, custody, and upbringing. Contrast *Felton* v. *Felton,* 383 Mass. 232 (1981); *Rolde* v. *Rolde,* 12 Mass. App. Ct. at 406. Further, the trial judge was aware of the parties' difficulties and has appointed an arbitrator with whom the husband and wife must attempt to resolve any differences

prior to resorting to or seeking judicial intervention. We think that *Rolde* is inapplicable on these facts and that the probate judge was justified in concluding that any existing conflict between the parties is not of the type which would render the joint legal and physical custody award inappropriate for David.

We turn to the wife's homosexual relationship. In *Bezio* v. *Patenaude*, 381 Mass. 563, 579 (1980), and most recently in *Custody of a Minor*, 389 Mass. 755, 767-770 (1983), the court has stressed that a parent's life-style, standing alone, is insufficient ground for severing the natural bond between a parent and a child. While these cases did not involve custody disputes arising out of divorce, the principle is nonetheless applicable in the present situation. In *Fort* v. *Fort*, 12 Mass. App. Ct. 411 (1981), we held that a father's involvement in an illegal heterosexual relationship was not in and of itself a valid reason for precluding him from receiving custody of his minor child. Rather, a parent's life-style must be evaluated "in terms of the interpersonal relationships of the persons involved as they affect the well-being of the child or children whose custody is under consideration." *Id.*, at 418. See G. L. c. 208, § 31.

Four psychiatrists testified at trial. As put by the trial judge, and the record supports him, "three of these people were of the opinion that the wife's lifestyle, in and of itself, would not adversely affect the minor child should the wife be awarded some form of custody."[2] Further, one of these three witnesses testified to a study he had conducted comparing single parent heterosexuals with minor children to single homosexual parents with minor children. He found "no difference in the minor children and no evidence of sexual dysfunction to a minor child reared by a single homosexual parent."

---

[2] The fourth psychiatrist testified that mere association between a minor child and a homosexual parent was detrimental to the child. The trial judge, however, found that this witness's opinion was not credible because "he had no supporting studies and his exposure to single parent lesbians was limited." Moreover, the witness "never articulated good reasons for his opinion."

There is no evidence to show that the wife's life-style will adversely affect David. He has been in his mother's home where he is "very comfortable," and he gets along well with his mother's roommate. David indicated that he liked sharing his time with each of his parents. When he resides with his mother, he has friends in that neighborhood with whom to play. The trial judge specifically found, and we think this an important fact, that David "has not been tormented by his friends in regard to his mother's lifestyle."

Should any of these present factors change, the custody award, upon suitable complaint and after hearing, may be modified. The present record does not justify a disturbance of the trial judge's decision.

2. *The Marital Residence.*

The parties stipulated at trial that the value of the marital residence was $110,000. In disposing of this property under G. L. c. 208, § 34, the trial judge made findings of fact in relation to the mandatory and discretionary factors listed in that statute. In so doing, he found that the property was subject to a mortgage in the amount of $44,914. Thus, the parties' equity in the property at the time of trial was about $65,000. With one exception, i.e., the value of the husband's profit sharing plan[3] which will be discussed below, the findings (as distinguished from the ultimate division) are supported by the evidence.

The trial judge ordered the wife to convey her interest in the property to the husband who, "in consideration thereof," was ordered to pay the wife $10,000 in cash and to give her a promissory note in the amount of $80,000, eight per cent interest on the unpaid principal "payable in six equal annual installments of principal and interest," the note to be secured by a mortgage on the residence.

The husband argues that the trial judge "cannot require the [h]usband to purchase the [w]ife's interest at a fixed

---

[3] Although the trial judge referred to this asset as a pension plan, we note that an accounting statement from the husband's employer designates the asset as a profit sharing and savings plan.

price," that "[s]o long as the [husband] objects to the trans-
action it cannot go forward," and that the value of the
wife's interest must be "realized upon the sale of the house
after partition." The husband's argument is answered by
the trial judge's broad authority under § 34 to dispose of
marital property so long as the basis for so doing is sup-
ported by the evidence and the division is within the limits
of a proper exercise of discretion. See *Rice* v. *Rice*, 372
Mass. 398, 401 (1977); *Putnam* v. *Putnam*, 5 Mass. App. Ct.
10, 13-14 (1977). See, e.g., *Dobson* v. *Dobson*, 10 Mass.
App. Ct. 930 (1980); *Tanner* v. *Tanner*, 14 Mass. App. Ct.
922 (1982). We can find, however, no explicit or implicit
rationale in the pleadings, in the findings of fact, or in the
judgment for the disputed distribution. It is obvious that
the judgment requires the husband to pay to the wife an
amount which is far greater than the value of the total equi-
ty in the property.

The only other asset of potential importance is the hus-
band's profit sharing plan. If in some manner the trial
judge looked to this asset in making a division of property
under § 34, we can find no evidentiary basis for the value of
the husband's present interest in the plan, $24,596, as found
by the trial judge. Although a profit sharing and savings
plan statement concerning this money was put in evidence
(see note 3, *supra*), we note from our examination of that
exhibit that it cannot be determined from the four corners
of the statement just how much of that $24,596 had vested
in the husband at the time of judgment. In his financial
statement filed with the Probate Court, the husband valued
his plan, less the estimated tax liability occasioned by its
distribution, to be about $1,500. In addition, the husband
testified at trial that the figure of $24,596 represented his
employer's projection of the value of the plan in 1984, based
on "the stock price" and the husband's continued employ-
ment.[4] We, therefore, see no support for the finding that

---

[4] Several months after the judgments were entered, the husband filed
another financial statement in which he represented that he was then

the husband's interest in the plan was worth almost $25,000. Even assuming that the husband's interest was accurately valued, we will not infer or speculate that the $90,000 payment ordered of the husband represents an assignment of the plan and the equity in the marital residence to the wife, as such an assignment is unwarranted and unreasonable in view of the trial judge's other findings of fact.

Further, the division cannot be regarded as an implicit award of alimony to the wife because the trial judge found, with support in the record, that "[b]oth the husband and the wife are employed and are capable of meeting their own individual needs." Nor can we view the judgment as an implicit "tradeoff" for the husband's obligation of support for David, see *Rolde* v. *Rolde,* 12 Mass. App. Ct. at 400 & n.4, as the judgment requires the husband to pay to the wife "as child support the sum of fifty ($50.00) dollars per week" and allows the husband to declare David as a dependent on his tax returns.

Finally, while the $90,000 payment is ordered "in consideration" of the wife's transfer of her interest, that amount exceeds the value of the equity in the property. This circumstance makes ambiguous the basis on which the trial judge acted with respect to the marital residence.

In view of these circumstances, we think it appropriate and necessary to reverse that portion of the judgments dis-

---

"unemployed." There is nothing before us to indicate that this postjudgment document was submitted in support of an appropriate pleading or motion. Even had such pleadings or motions been filed by the husband and denied by the trial judge, the husband has appealed only from the judgments. See Mass.R.A.P. 3(c), as appearing in 378 Mass. 927 (1979). We cannot consider the postjudgment document, objected to by the wife, in our review of the judgments. The circumstance suggested, that the husband was unemployed at the time of that statement, indicates the desirability of inquiry into this subject on remand.

It may be appropriate, as a related matter, to give consideration to whether the plan can be realized by the husband as a present asset without incurring heavy tax liability. See *Sheskey* v. *Sheskey, ante* 159, 161-162 (1983).

posing of the marital residence. The trial judge should clarify by new or additional findings, or reconsider, the property division in a manner which deals with the concerns herein expressed in light of the parties' present circumstances.

3. *Miscellaneous Issues.*

a. *Child support.* The husband intimates that as matter of law, if the wife's relationship with her roommate was sufficiently stable to justify the previously discussed custody award, then the trial judge erred in assessing child support without regard to the roommate's financial resources. But the judge could properly take into account that the roommate has no legal obligation to support either the wife or the wife's child. Contrast *Silvia* v. *Silvia*, 9 Mass. App. Ct. 339, 342 (1980). Other than to urge this claim as an abstract matter, the husband makes no argument on the evidence concerning the parties' financial needs and abilities as they relate to child support.

b. *Conduct of the trial.* The husband's claim that a reversal of the judgments is mandated by the single fact that the six-day trial was conducted over a one-month period, see e.g., *Mailer* v. *Mailer*, 387 Mass. 401, 402 n.1 (1982), is frivolous.

4. *Conclusion.*

The second to last paragraph of each judgment, dealing with the division of property, is reversed, and that matter is remanded to the Probate Court for further proceedings consistent with this opinion. The balance of each judgment is affirmed. Neither party is to have costs of appeal.

*So ordered.*