## B.B.V. *vs.* B.S.V.

No. 06-P-310.

Worcester. November 7, 2006. - December 29, 2006.

Present: CYPHER, GRASSO, & KAFKER, JJ.

*Divorce and Separation,* Child custody. *Minor,* Custody. *Parent and Child,* Custody of minor. *Probate Court,* Custody of child. *Incest.*

This court concluded that the judge in a custody case committed no abuse of discretion or error of law in granting to the wife physical custody of the children, but this court remanded the case to the Probate and Family Court to impose a limitation on the award of physical custody to the wife, namely, that she not permit or allow the children to be in the presence of the wife's father (with whom she was having an incestuous relationship), nor permit her father to maintain a room or other physical presence in the home so long as the children reside with her. [18-21]

COMPLAINT for divorce filed in the Worcester Division of the Probate and Family Court Department on May 12, 2003.

The case was heard by *Gregory V. Roach,* J.

*Steven E. Bauman* for B.S.V.

*Shaun B. Spencer* for B.B.V.

GRASSO, J. We consider in this appeal the Hobson's choice that a probate judge sometimes confronts in determining what is in the best interests of the children when granting physical custody. The husband, B.S.V., appeals from so much of a divorce judgment as grants sole physical custody of the parties' twin sons (W.V. and G.V.) to the wife, B.B.V. See G. L. c. 208, § 31. Based on the recommendations of a guardian ad litem (GAL), therapists, and his own appraisal, the judge determined that as between the husband and the wife, it was in the present best interests of the children that their physical custody be with the wife. On appeal, the husband contends that the judge abused his discretion in granting the wife physical custody because the wife had an incestuous relationship with her own father, R.S.

After careful consideration, and given the alternatives facing the judge, we discern no abuse of discretion or other error of law. See *Vilakazi* v. *Maxie*, 371 Mass. 406, 409 (1976) (determination of custody rests within the discretion of the judge). We emphasize, however, a necessary limitation on the award of physical custody in favor of the wife. At no time shall the wife permit or allow the children to be in the presence of R.S.; nor shall she permit R.S. to maintain a room or other physical presence in the home so long as the children reside with her.

1. *Essential background.* From the judge's findings, supplemented where appropriate by undisputed testimony and documentary evidence, we recite the essential background. The husband and the wife married on June 2, 1990. They are the parents of twin boys, W.V. and G.V., born on November 21, 1998. The boys were six and one-half years old as of the time of trial and almost seven when the judge made his findings of fact.[1]

The events most material to this appeal began in May, 2002, when the wife initiated contact with her biological father, R.S., from whom she had been estranged for virtually all her life. R.S. left the wife's mother in 1966 when the mother was pregnant.[2] The wife's initial telephone contact led to more extensive electronic mail message (e-mail) and telephone contact with R.S., who lived in California. She spent up to three hours per day communicating with him, sending e-mails that even she concedes are sexually suggestive.

The wife's first face-to-face contact with R.S. occurred during a visit to California in September, 2002. There, as she later confided to a friend, she had "broken her marriage vows." In November, 2002, R.S. made a Thanksgiving visit to the parties' marital residence in Massachusetts. In March, 2003, R.S. separated from his spouse and came to live with the parties at their marital residence. The nature of the wife's relationship with R.S. became a subject of increasing marital discord and was the major precipitant in the deterioration of the marriage. It

---

[1]The children were younger still when they were interviewed by the GAL and evaluated by other specialists regarding their awareness of events transpiring in their home.

[2]The wife understands that one of the reasons for her parents' divorce involved a sexual offense for which R.S. was incarcerated.

remains the focus of the acrimonious battle involving custody of the children.

In May, 2003, the wife filed for divorce. Until the husband moved out of the marital home at the end of May, the wife slept "on the floor" in a room occupied by R.S. After the parties separated, R.S. continued to reside in the marital home with the wife and the minor children. The husband then lodged a series of complaints with the Department of Social Services (DSS), the police, and the Probate and Family Court, asserting that his son, W.V., was being sexually abused by R.S., and that the wife and R.S. were engaged in an incestuous relationship. The husband moved for sole custody, supervised visitation by the wife, and an order that the children not be allowed in the presence of R.S.

DSS investigated and found no evidence of abuse. Nor did criminal charges result from the police investigation. A probate judge appointed a GAL to investigate and report on the issues of custody and visitation. See G. L. c. 215, § 56A. The judge also ordered the children to undergo behavioral and psychological evaluation by an expert in child sexual abuse.[3]

In March of 2004, when the GAL filed his report, concluding that the wife was involved in an incestuous relationship with R.S., the husband moved for sole physical custody of the children and a prohibition on visitation with the wife. After an evidentiary hearing, the judge made findings of fact and granted the husband temporary sole physical custody of the children. The judge agreed with the GAL's determination and found that "the [wife] was engaged in an incestuous relationship with her father."[4] The judge also found that "[a]lthough the Court is not presently aware of any effect this relationship has on the minor children, it is in their best interests at this time that the primary custodian be the father, until such time as the Massachusetts Society for the Prevention of Cruelty to Children evaluation is completed and other facts are presented to the Court." He

---

[3]A psychologist from the Massachusetts Society for the Prevention of Cruelty to Children conducted the ordered evaluation.

[4]The circumstantial and other evidence supports the judge's conclusion and the ensuing temporary orders. This evidence includes the wife's e-mails to R.S., her admissions to a friend that she had broken her marriage vows in California, and other details on which we need not dwell.

granted the wife visitation, but ordered that R.S. "shall not be present at any time during visitation." See G. L. c. 208, § 19. He also ordered the wife to undergo an evaluation by a psychiatrist or psychologist of her own choosing.

Until the judgment of divorce nisi in November, 2005, the husband had physical custody of the children, and the wife had visitation, subject to the limitation that R.S. not be present with the children.

2. *The findings bearing on custody.* Faced with competing claims for custody of the children at trial, the judge sought to determine which parent was the more appropriate custodian.[5] As relevant to custody, the judge heard from numerous witnesses, including the GAL, the psychologist at the Massachusetts Society for the Prevention of Cruelty to Children (MSPCC), the wife's chosen evaluator (her therapist), the wife, the husband, a teacher, a former friend to whom the wife made admissions, the husband's expert witness psychologist, and a private investigator retained by the husband. The judge made detailed factual findings, which are supported by the record, and determined that as between the husband and the wife, the wife was the better custodian notwithstanding the serious concerns raised by her relationship with R.S.

a. *The wife as custodial parent.* Prior to the husband being granted temporary physical custody of the children, the wife always had been their primary caretaker. She was responsible for day-to-day parental decision-making, arranging day care, choosing their school, and picking them up from day care.

Since the children have resided with the husband, the wife has maintained lines of communication with the children's teachers. When the children are with the wife, she primarily cares for them. The wife both desires and is able to be their primary caretaker. Her work schedule permits her to care for the children in the evenings after day care.

The wife would provide the children with the consistent living arrangement and the willingness to foster contact with both

---

[5]DSS found no basis to maintain an action that the children were in need of care and protection. There is no suggestion in the evidence, and neither party contends, that the other is parentally unfit. See G. L. c. 201, § 5; *Fort* v. *Fort*, 12 Mass. App. Ct. 411, 414-415 (1981).

parents recommended by the MSPCC psychologist (a stability and a willingness that would not be provided by the husband). See *Custody of Kali*, 439 Mass. 834, 842 (2003) (stability and continuity with primary caregiver an important factor in custody). After the parties' separation and prior to the change in custody to the husband, the wife included the husband in decision-making and school meetings. The wife has expressed a willingness to work around the husband's schedule with regard to the children, to keep him informed, and to allow him telephone contact with the children. Moreover, the GAL who initially recommended temporary physical custody to the husband was now of the view that the wife was the better custodian, given that R.S. had moved out of the marital residence and did not participate in visitation with the children.

The children miss being in the wife's primary care and cling to her at the end of visits. Even the husband stated that he believed the children should be with the wife if not with him.

The wife's relationship with R.S. had not had a negative impact on the children, either emotionally or physically. The children are "rambunctious, happy and healthy six (6) year-old children." Investigations by DSS and MSPCC revealed no hint that the children had been abused or had witnessed any inappropriate behaviors between the wife and R.S. A psychological assessment of the child W.V. disclosed no evidence of abuse or trauma.

Since April, 2004, the wife had been seeing a psychologist on a weekly basis for counselling regarding her relationship with R.S.[6] The wife had complied with the order that R.S. not be present for any of the wife's visits with the children. While R.S. had physically moved out of the marital residence and obtained an apartment, he still spent overnights with the wife at the marital residence when the children were not present. The judge did not credit the wife's testimony regarding the extent of her relationship with R.S. However, the judge did not find, as he

---

[6]The wife began counselling after she completed the court-ordered psychological assessment of her emotional and psychological fitness to be the children's primary caretaker. Her psychologist diagnosed the wife as suffering from "depression" and "situational distress" owing to the ongoing custody proceeding.

had at the time of the temporary order, that there was an ongoing incestuous relationship.

Although the wife's relationship with R.S. was a major factor in the break-up of the family unit, it had not yet affected her parenting of the children or providing for their needs so as to render her unfit to parent them. In the judge's view, there was no nexus between the wife's inappropriate relationship with R.S. and her parenting and providing for the children's needs. See *Bouchard* v. *Bouchard*, 12 Mass. App. Ct. 899, 899 (1981) (custody award not a device to discipline parent for shortcomings); *Doe* v. *Doe*, 16 Mass. App. Ct. 499, 503 (1983) (parent's involvement in illegal relationship not in and of itself valid reason for denying custody of minor child). Compare *Adoption of Katharine*, 42 Mass. App. Ct. 25, 28 (1997) (for termination of parental rights, parental unfitness means more than character flaw or conviction of a crime; child's best interests bear on how much parental deficiency is tolerable). The judge exhorted the wife to continue with her counselling efforts.

b. *The husband as custodial parent.* The judge found that the husband had evidenced no desire to become the children's primary caretaker. Since the children were placed in the husband's primary custody, he has relegated the responsibility for their care to his girlfriend. The children spend thirty-five to forty hours per week with the husband's girlfriend. She picks them up from day care, feeds them and readies them for bed, and provides almost all their care.

The husband interacts and plays with the children when his work schedule permits, but he has made no effort to adapt his work schedule to accommodate his responsibilities to the children.[7] He works two to three nights per week and all day every Sunday. Despite prior indication that he would make attempts to seek employment that would allow him to spend time with and care for the children himself, the husband has not taken the expected steps to assume the responsibilities of a custodial parent. If granted custody, he intends to have his mother or girlfriend care for the children after school.

The husband is overwhelmed when the children are in his

---

[7]The husband is trained as an environmental geologist but at the time of trial was employed as a delicatessen clerk at a supermarket.

custody. After he obtained temporary physical custody of the children, the husband made no attempt to ease their confusion over the change in custody from their mother. He failed to obtain proper medical follow-up care for G.V. after surgical insertion of a tube in the child's ear. The husband also sought to exclude the wife from parental decisions. He put the other child, W.V., in counselling without the wife's prior knowledge or consent. The husband also failed to provide a stable home environment for the children. He and his girlfriend moved with the children three times in a one-year span. At one point, he moved into a one-bedroom apartment in which the twins slept on an air mattress on the floor.

Moreover, the husband's anger over the wife's conduct consumes him and negatively affects his parenting of the children. He monitors their telephone conversations with the wife. He discusses the wife's and R.S.'s relationship with the wife's neighbors and asks them to inform him of goings-on. He also inappropriately discusses with and inquires of the children regarding the wife's relationship with R.S. "and tells them that their mother does 'bad things.' " Indeed, the husband readily acknowledged that he keeps a diary of the wife's relationship to show the children at a future date. See *A.H.* v. *M.P.*, 447 Mass. 828, 830 (2006) (inability to place child's needs above parent's own bears on determining best interests of child).

In balancing the above factors, the judge concluded that while both parties have a deep love and genuine concern for the children's well-being, as between the husband and the wife, "it is currently in the best interests of these children to be in the physical custody of their mother, who can be their primary caretaker and provide them with stability."

3. *Discussion.* "The determination of custody is a choice among limited alternatives, all of which, invariably, have imperfections, often serious imperfections. The judgment that is called for is a realistic, commonsense judgment, one which weighs the practical significance of those imperfections or deficiencies in terms of their effect on the well-being of the child and his future development." *Fort* v. *Fort*, 12 Mass. App. Ct. 411, 418 (1981). "Absent clear error, we will not substitute our weighing of the evidence for that of a trial judge who had

the opportunity to observe the witnesses and form conclusions about their credibility, even if our weighing of the evidence might have differed from that of the judge." *A.H.* v. *M.P.*, *supra* at 838. The trial judge is in a position far superior to ours, and absent an abuse of discretion we do not presume to interfere. See *Bak* v. *Bak*, 24 Mass. App. Ct. 608, 616 (1987); *Freedman* v. *Freedman*, 49 Mass. App. Ct. 519, 521-522 (2000).

We recognize that the wife's relationship with R.S. raises significant concerns that ultimately could result in her loss of physical custody of the children. At present, we discern no abuse of discretion or other error of law in granting the wife physical custody of the children, provided that she does not permit the children to be exposed, directly or indirectly, to the presence of R.S. See *Rolde* v. *Rolde*, 12 Mass. App. Ct. 398, 402-403 (1981) (guiding principle in exercise of discretion is the best interests of the children). The return of physical custody to the wife must rest on this condition. While the judge did not explicitly impose such a limitation, his findings and rationale (as well as the recommendations of the GAL and the other experts that the judge credited at trial) recognize the need for and are premised on this limitation.[8] Moreover, nothing in the evidence or the judge's findings or rationale suggests a diminished need for prohibiting contact between R.S. and the children. A fortiori, given the wife's past conduct, the need for such a condition is greater when the wife is to have sole physical custody rather than mere visitation.

Moreover, on the facts found by the judge, the absence of this constraining condition on a grant of physical custody to the wife would be an abuse of discretion. Awarding physical custody to the wife required the judge to consider "whether or not the [children's] present or past living conditions adversely affect [their] physical, mental, moral or emotional health." See G. L. c. 208, § 31, as appearing in St. 1989, c. 689. While we do not challenge the judge's findings that the wife's relationship with R.S. had not caused demonstrable harm to the children, we have serious doubt that a six year old child has the ability to

---

[8]The husband does not dispute that the judge properly could rely upon the findings and recommendations of the GAL. See G. L. c. 215, § 56A; *Gilmore* v. *Gilmore*, 369 Mass. 598, 604-605 (1976).

recognize an inappropriate or incestuous relationship, much less the understanding to comprehend its significance.

A child's comprehension is not static. As the children grow in years, so too will their awareness of their environment. "It is the duty of the judge to consider the welfare of the child[ren] in reference not merely to the present, but also to the probable future . . . ." *Jenkins* v. *Jenkins*, 304 Mass. 248, 250 (1939). A judge need not wait for the obvious harm that would befall children who are exposed, directly or indirectly, to an incestuous relationship. See *Prince* v. *Massachusetts*, 321 U.S. 158, 166-168 (1944). See also *Blixt* v. *Blixt*, 437 Mass. 649, 656 (2002), cert. denied, 537 U.S. 1189 (2003) (State has "compelling interest to protect children from actual or potential harm"). We do not view the judge's exhortation that the wife continue with counselling to address her relationship with R.S. as an adequate safeguard given her past conduct.[9]

The criminal prohibition against incest set forth in G. L. c. 272, § 17, serves to "promote the sanctity and integrity of familial relationships, as well as to protect children within the family from sexual impositions by their elders." *Commonwealth* v. *Smith*, 431 Mass. 417, 422 (2000). At the time of the temporary order granting physical custody to the husband, the judge did not find the wife's relationship with R.S. to be a singular lapse. There can be no real dispute that if the wife and R.S. were to engage in an ongoing incestuous relationship to which the minor children were exposed, directly or indirectly, then at some point there would be a direct and articulable adverse impact on the children. See *Fort* v. *Fort*, 12 Mass. App. Ct. at 414-417. In these circumstances, it would be error to omit such an essential prophylactic measure to safeguard the well-being of the children, especially one that was already in place and relied on by the judge and other experts at the award of physical custody.

The terms of the judgment awarding sole physical custody to

---

[9]We view with some skepticism the efficacy of such a safeguard where the wife consistently has denied the inappropriate nature of her relationship with R.S. to her therapist and where the therapist has never viewed the wife's e-mails to R.S. See generally *Commonwealth* v. *Brouillard*, 40 Mass. App. Ct. 448, 451-452 (1996), and cases cited, cautioning against intermingling the roles of independent expert witness and treating therapist.

the wife are vacated and the case is remanded to the Probate and Family Court for the entry of an appropriate judgment in accordance with this opinion. It is open to the judge on remand to consider such additional safeguards on the grant of physical custody to the wife as may be in the children's best interests. Of course, the order of custody is open to modification should the circumstances change in the future. See *Doe* v. *Doe*, 16 Mass. App. Ct. at 503-504.[10]

*So ordered.*

---

[10]We decline the wife's request for appellate attorney's fees and costs.