Divya Balachandran Kurup-Singh (mother) appeals from a judgment of divorce awarding Ajay Kumar Singh (father) sole legal custody of the parties' minor child and limiting the mother to supervised visitation once a week.[2] We affirm.
In matters of custody, "the touchstone inquiry" is the best interests of the child. Hunter v. Rose, 463 Mass. 488, 494 (2012), quoting Custody of Kali, 439 Mass. 834, 840 (2003). "The determination of which parent will promote a child's best interests rests within the discretion of the judge ... [whose] findings ... 'must stand unless they are plainly wrong.' " Id., quoting Custody of Kali, 439 Mass. at 845. We have recognized that this determination requires "a choice among limited alternatives, all of which, invariably, have imperfections, often serious imperfections"; thus, "[t]he judgment that is called for is a realistic, commonsense judgment, one which weighs the practical significance of those imperfections or deficiencies in terms of their effect on the well-being of the child and [her] future development." B.B.V. v. B.S.V., 68 Mass. App. Ct. 12, 18 (2006), quoting Fort v. Fort, 12 Mass. App. Ct. 411, 418 (1981).
Here, we construe the mother's essential argument to be that the judge's custody determination is not in the child's best interests because the judge did not properly consider the domestic abuse committed by the father against the mother. The judge's comprehensive findings reflect, however, that she carefully considered all the evidence, including evidence of the father's abuse, and rendered a "realistic" and "commonsense" decision based on the totality of the circumstances presented. Id. The judge found that, while each party had committed abuse against the other, the mother "principally initiated the violence" and "engaged in a pattern of abusive behavior which emotionally distressed their child by physically and verbally abusing and disparaging the [father] in front of the child and by initiating serious incidents of abuse toward the [father] in front of the child." The judge found it concerning that the mother "fail[ed] to take responsibility for her actions"; refused to cooperate with the guardian ad litem (GAL) and the Department of Children and Families (DCF); refused to participate in early intervention and "to accept feedback from various professionals who have been involved in this matter"; failed to visit the child consistently; during the visits she did attend, displayed a "lack of engagement" and "lack of routine and diaper changes that distressed the child"; and "failed to recognize the damage to the child from witnessing violence and going for extended periods without seeing her mother." In addition, the judge credited the GAL's testimony "that there was no observable improvement in the [m]other's ability to control her emotions toward the [father] during the course of these proceedings."
In contrast, the judge found that the father cooperated with the GAL and DCF, participated in early intervention, took the child to pediatrician's appointments, met with her teachers, and "consistently attended to and met the child's needs and ha[d] fostered and encouraged a positive relationship between the [mother] and the child." The judge credited the GAL's testimony that "the [father] and the child looked comfortable and at ease with each other." The judge also expressly took into account evidence of the father's parental shortcomings, including the abuse he perpetrated against the mother, his gambling problems, and his "limited coping skills when faced with ... conflicts [with the mother,] which have at times impacted the child." Despite these shortcomings, however, the judge found that the father "has provided the child with a calm stability and focused assistance on her medical, educational and other needs" and "has made good and healthy choices for the child."
Faced with this evidence, and with evidence that the parties could not effectively communicate with each other about the child, the judge concluded that the child's best interests would be best served by placing custody with the father and, for the time being, limiting the mother to supervised visitation. "Absent clear error, we will not substitute our weighing of the evidence for that of a trial judge who had the opportunity to observe the witnesses and form conclusions about their credibility...." B.B.V., 68 Mass. App. Ct. at 18-19, quoting A.H. v. M.P., 447 Mass. 828, 830 (2006). We discern no such clear error and no abuse of discretion in the judge's conclusions regarding the child's best interests.
We also discern no merit in the mother's other miscellaneous arguments. Though the mother contends that the judge improperly relied on the GAL's assessment of the parties' credibility, it is plain from the judge's findings that she independently analyzed the evidence and made her own credibility determinations. We further reject the mother's assertion that the judge did not consider evidence showing that the child had dropped in weight and height while she was in the father's care. The judge found that the child was of "average weight and height" and rejected the wife's claim that the child was not where she should be for her age. Finally, to the extent the mother is challenging the financial aspects of the judgment, she has failed to present adequate appellate argument as to those issues.[3]
The mother's appeal from the order entered January 7, 2016, denying her motion for relief from the temporary custody order, is dismissed as moot. The judgment of divorce is affirmed.
So ordered.
Affirmed.

We dismiss as moot the mother's separate appeal from an order denying her motion for relief from a temporary custody order. Because a final judgment of divorce has entered, the temporary custody order, along with the order denying the mother's motion for relief from that order, are no longer subject to review. See R.R. v. M.H., 426 Mass. 501, 502 (1998) ; Kendall v. Kendall, 426 Mass. 238, 239 n.2 (1997) ; Adoption of Roni, 56 Mass. App. Ct. 52, 58 (2002).

The mother states, with no further explanation, that the judge "ignored the great disparity in earnings and earning capacity of the parties."