MARIE C. ANGELONE *vs.* GINO I. ANGELONE.

Middlesex. April 11, 1980. — May 14, 1980.

Present: ARMSTRONG, GREANEY, & PERRETTA, JJ.

*Divorce*, Division of property, Custody of child. *Probate Court*, Findings
by judge.

Evidence before a Probate Court judge permitted a conclusion that a di-
vorced wife was dealing successfully with her emotional problems,
that as between her and her former husband she could offer their
children "more room for growth," that the husband had an "obsession
with keeping control" of the family which was a cause of the wife's
stress, and that the children's welfare would best be served by granting
custody to their mother. [729-730]
A Probate Court judge who carefully considered the needs of the children
of a divorced couple, including the desirability that the mother only
work part-time, and the disparity between the couple's education and
future earning capacity, and all of their assets and liabilities commit-
ted no abuse of discretion in ordering the father to pay a certain
amount weekly for the support of the mother and children. [730-731]
An order by a Probate Court judge, that a divorced husband convey to his
former wife his interest in their marital home held as tenants by the en-
tirety, which had increased in value substantially since purchased, was
"based on a comprehensive analysis of all major contributions by the
spouses," and, with an allocation to him of the liquid assets of the par-
ties sufficient to pay the unascertained capital gains tax, was within
the judge's discretion. [731-732].

CIVIL ACTIONS commenced in the Probate Court for the
county of Middlesex on December 6, 1976, and October 24,
1977, respectively.

The cases were heard by *McGovern*, J.

*Michael Wheeler* for the defendant.

*Diane Lund* for the plaintiff.

GREANEY, J. On August 21, 1979, Marie Angelone (Marie)
was granted a judgment of divorce nisi from Gino Angelone
(Gino) by a Probate Court on the ground of cruel and abu-

sive treatment. Gino appeals from this judgment in so far as it: (a) awarded custody of the couple's four minor children (ages five to eleven) to Marie; (b) ordered Gino to pay Marie, as alimony and for maintenance of the children, the sum of $200 per week; and (c) ordered him to convey to Marie all his right, title, and interest in the marital home in Framingham. We have before us, for purposes of determining these issues, a transcript of the evidence and the judge's detailed findings of fact as to the "welfare of the children" (*Masters* v. *Craddock*, 4 Mass. App. Ct. 426, 428 [1976]) and as to her consideration of each of the mandatory factors enumerated in G. L. c. 208, § 34, as appearing in St. 1975, c. 400, § 33. *Bianco* v. *Bianco*, 371 Mass. 420, 423 (1976). *Rice* v. *Rice*, 372 Mass. 398, 401 (1977). *Putnam* v. *Putnam*, 7 Mass. App. Ct. 672, 674 (1979). We turn directly to the challenged orders, examining them under the familiar rule that we will not reverse the orders of a probate judge in the areas of custody and support unless the judge's findings are clearly erroneous. Mass.R.Dom.Rel.P. 52(a) (1975). *King* v. *King*, 373 Mass. 37, 40 (1977). *Prindle* v. *Fisk*, 2 Mass. App. Ct. 843, 844 (1974). *Clarke* v. *Clarke*, 3 Mass. App. Ct. 736, 737 (1975). *Daigle* v. *Daigle*, 5 Mass. App. Ct. 847 (1977).

1. *Custody.* Gino argues that the judge erred in awarding custody of the children to Marie, who had been voluntarily hospitalized for short periods for emotional problems and whose therapist testified during the hearing that she had a "predisposition" to depression. He does not claim (nor could he on this record) that Marie's problems, or the fact that she has sought help for them, render her unfit as a parent. *McMahon* v. *McMahon*, 1 Mass. App. Ct. 647, 649 (1973) (father's neurosis, for which psychiatrist is treating him, "does not impair his ability to function properly as a responsible parent"). He argues instead that a probate judge must award custody to the superior of two fit parents, and that he is the superior custodian by virtue of Marie's latent condition and his greater emotional stability. While it is true that in determining the question of custody "the

rights of the parents shall . . . be held to be equal" (G. L. c. 208, § 31), the statutory focus remains that "the happiness and welfare of the children shall determine their custody and possession." *Id.* Obviously, the comparative emotional health of the parents is only one of several factors which can affect the well being of their children. See generally Annot., Mental Health of Contesting Parent as Factor in Award of Child Custody, 74 A.L.R.2d 1073 (1960). That is especially the case where, as here, the findings indicate that all professionals regard the mother as a fit and suitable parent, she has been the children's primary caretaker for most of their lives, and they live with her in a settled environment. See *Stevens* v. *Stevens*, 337 Mass. 625, 627-628 (1958); *Fuller* v. *Fuller*, 2 Mass. App. Ct. 372, 377 (1974); *Prindle* v. *Fisk*, 2 Mass. App. Ct. at 844. In addition to her own observations of the parents during their testimony (see *Clarke* v. *Clarke*, 3 Mass. App. Ct. 736, 737 [1975]), the judge had the benefit of the reports and testimony of a psychologist who was appointed to investigate the custody and visitation arrangements for the children. The psychologist talked with the parties, their counsel, the children, and the current therapists of both the husband and the wife. Both therapists also testified on behalf of their respective clients. There is ample evidence in the record to support the judge's comprehensive subsidiary findings, and we see no purpose in attempting to summarize them. *Masters* v. *Craddock*, 4 Mass. App. Ct. at 428. In our opinion, on the evidence before her, the judge could permissibly conclude: (a) that Marie is dealing successfully with her emotional problems; (b) that of the two parents "she despite her problems can offer the children more room for growth"; (c) that Gino has an "obsession with keeping control over the life of his wife and children" which causes much of her stress; and (d) the the welfare of the children will best be served by granting custody to their mother, with liberal and specific rights of visitation for the father.

2. *Support.* Gino contends that the $200 per week support payments ordered by the judge for his wife and chil-

dren were clearly excessive because the award constitutes approximately thirty-seven percent of his gross weekly income and because Marie is also employed part-time and earning $141.70 per week gross income. Before making this order, the judge carefully considered the needs of the children, including the desirability that their mother only work part-time. She also considered the disparity between the couple's education and future earning capabilities, and all of their assets and liabilities. We cannot say that the judge abused her discretion in concluding that Gino, who lived with his mother and thus had modest personal needs, could and should provide the amounts ordered toward the needs of his family. See Ginsburg, Predictability and Consistency in Alimony and Support Orders, 22 B.B.J. (No. 9) 23, 25 (1978). To the extent that the judge pondered income tax consequences, the order also reveals an allocation of tax burdens in a manner as favorable to the husband as to the wife.

3. *Conveyance of the marital home.* Gino argues that the judge did not consider the significant tax impact inherent in ordering him to convey to Marie his interest in their house in Framingham, which the parties purchased as tenants by the entirety for $18,500 in 1967 and which they stipulated had a fair market value of $40,000 in 1979. The gravamen of the husband's complaint is that, because of the appreciation in the property's value and the fact that such a forced transfer is a taxable event (see generally Freedman, ABC's of the Tax Aspects of Divorce, 22 B.B.J. [No. 9] 9, 14-15 [1978]), he will be subject to a substantial taxation. As previously discussed, the judge considered each of the mandatory factors set forth in G. L. c. 208, § 34. She analyzed the parties' respective financial resources, including major retirement benefits to which Gino will become entitled at age fifty-seven. Her order encompasses "all substantial assets jointly owned and any separate property representing accretion during the marriage, [and is clearly] based on a comprehensive analysis of all major elements of contribution by the spouses during the marriage." *Putnam* v. *Putnam,* 7 Mass. App. Ct. at 673, quoting *Putnam* v. *Put-*

*nam*, 5 Mass. App. Ct. 10, 17 (1977). Accord, *Bianco* v. *Bianco*, 371 Mass. at 423; *King* v. *King*, 373 Mass. at 40. Moreover, the judge's order specifically allocated to Gino the majority of the liquid assets of the parties, including proceeds in the amount of $1,540 from a term certificate and the shares from a stock fund valued at $6,750 on the date of the hearing, minus a $600 deduction towards Marie's attorney's fees. This amount should provide him with sufficient funds to pay whatever capital gains taxes are assessed as a result of the order. Because there was no attempt to introduce evidence concerning "tax consequences to the husband of the judge's property assignment . . . the judge's order cannot be plainly wrong, as alleged, for failure to consider such tax consequences." *Rice* v. *Rice*, 372 Mass. at 402 n.4. The equitable property division ordered by the judge was within her discretion.

Finally, we note that our consideration of this appeal has been aided considerably by the judge's comprehensive and thorough analysis of the issues. Her memorandum of decision reflects both conscientious scholarship and a balanced sensitivity to the delicate rights involved.

*Judgment affirmed.*