ALEXANDRA K. ROLDE vs. EDWARD J. ROLDE.

Middlesex.  May 15, 1981. — August 28, 1981.

Present: ARMSTRONG, ROSE, & BROWN, JJ.

*Divorce and Separation,* Alimony, Division of property, Child support, Custody of child.

Where the judge in a divorce action was warranted in finding that both parties had and would continue to have substantial incomes, that they each had substantial financial assets, and that, because of their difficulty in communicating and inability to cooperate with each other, the *optimum* arrangement would be to preclude all personal interaction and financial transactions between the parties, he did not abuse his discretion in awarding the marital home to the wife and relieving the husband of all alimony and child support payments.  [400-402]

The judge in a divorce action did not abuse his discretion or commit error of law in determining that the personal hostility between the parties and their inability to cooperate or agree on proper child-rearing practices precluded an award of joint custody of their three minor children, or in concluding that the children's best interests would be served by awarding sole custody to the mother.  [402-406]

In the circumstances, the judge in a divorce action did not err in reducing the husband's visitation with his three minor children to less than it had been under a temporary custody order.  [406]

COMPLAINTS for divorce filed in the Probate Court for the county of Middlesex on August 29, 1977, and January 11, 1980, respectively.

The cases were heard by *Ginsburg,* J.

*Marjorie Sommer Cooke (Catherine S. Croisant* with her) for the defendant.

*David M. Wright (Jacob M. Atwood* with him) for the plaintiff.

BROWN, J.  On August 29, 1977, Dr. Alexandra K. Rolde (wife) filed a complaint for divorce on the ground of cruel and abusive treatment.  Thereafter the husband, Dr. Ed-

ward J. Rolde, cross complained on the same ground. On May 7, 1980, a judgment of divorce nisi was entered in each action. The Probate Court awarded sole custody of the three minor children to the wife and ordered the husband to release all his interest in the marital residence in exchange for the settlement of any claims the wife might have with respect to alimony payments. See G. L. c. 208, § 34 (as appearing in St. 1977, c. 467).

The husband was further released from all child support obligations, and the wife was ordered to convey to him all her interest in a parcel of land located in Maine. The husband brings this appeal challenging (a) the division of the marital assets and (b) the award of sole child custody to the wife.[1] No question has been raised as to the divorces.

We think that this case is controlled in all material aspects by our extensive discussion and detailed analysis in *Angelone* v. *Angelone*, 9 Mass. App. Ct. 728 (1980), of quite similar questions. As in *Angelone, supra,* we have before us a transcript of the evidence and the judge's detailed and comprehensive findings on all the essential and required factors pertaining to the matters in dispute. We are also aided in our resolution of the issues presented on appeal by the judge's extensive discussion concerning the hearings before him and his analysis of those proceedings.

The pertinent facts are summarized. The parties were married in May, 1966, and at that time both were engaged in their respective careers as psychiatrists. After approximately eleven years, the marriage had become less than idyllic. At that time the parties were severely antagonistic and embittered toward each other.[2]

---

[1] We summarily dispose of the husband's contention that the judge deprived him of his right to a fair trial by prejudging the issues and by making erroneous and inequitable rulings. A reading of this opinion should make manifest that that contention is devoid of substance, and in view of its lack of merit we see no need to discuss it further.

[2] By May, 1977, the marriage had crumbled. The trial judge found that despite professional counseling "incidents occurred in which each caused the other significant emotional distress."

In December, 1977, the parties separated. At the time of this separation the parties had three children: David (age 10), Daniel (age 7) and Dorothy (age 3). The husband moved to a home in Brookline, and the wife remained with the three minor children in their marital home located in Weston. (In 1979 the husband purchased a home in Weston and relocated there.) Prior to their separation the parties had agreed upon certain custody and visitation arrangements, whereby the children would continue to reside with the wife and the husband would have limited but reasonable visitation rights. On June 23, 1978, a temporary custody order was entered to that effect. The order provided that the children would spend six weeks in the summer, one evening a week, alternate weekends and alternate holidays with their father. Following an eight-day trial[3] the judge awarded sole custody of the children to the wife, limited Edward's visitation rights to two weeks in the summer, and eliminated evening visitation during the alternate weeks on which there is weekend visitation; the holiday schedule remained the same.

1. *Division of Marital Assets.*

In his principal challenge to the judge's division of the marital property, the husband, relying on dicta in *Rice* v. *Rice*, 372 Mass. 398 (1977), contends that the trial judge "abused [his] discretion by making a tradeoff of [the husband's] equity in the marital home for [the husband's] support obligation for his children, a consideration not permitted by [G. L. c. 208, § 34]." We disagree.[4] See *Topalis* v. *Topalis*, 2 Mass. App. Ct. 530, 531 (1974).

Consistent with the mandate of G. L. c 208, § 34, the Probate Court judge "made detailed findings on each item

---

[3] The central focus of the trial and the thrust of the evidence presented dealt with the issue of the fitness of the respective parents and custody of the children.

[4] We also think that the judge could in considering § 34 factors properly view child support (which in this case appears to be substantial) as a future "need" of the custodial parent.

in the statutory collocation." *Bahceli* v. *Bahceli*, 10 Mass. App. Ct. 446, 449 (1980). *Bianco* v. *Bianco*, 371 Mass. 420, 423 (1976). *Rice* v. *Rice*, 372 Mass. at 401. *Putnam* v. *Putnam*, 5 Mass. App. Ct. 10, 16-17 (1977). *Newman* v. *Newman*, 11 Mass. App. Ct. 903 (1981). It is well settled that a judgment awarding alimony or a division of marital property which is supported by findings necessary to sustain it will not be set aside unless those findings are "plainly wrong." *King* v. *King*, 373 Mass. 37, 40 (1977). *Angelone* v. *Angelone, supra* at 729. See Mass.R.Dom.Rel.P. 52(a) (1975).

A trial judge "has broad discretion in awarding alimony after he has considered all the statutory factors." *Bahceli* v. *Bahceli, supra* at 449. That discretion is sufficiently broad to encompass "the myriad of different fact situations which arise," *Newman* v. *Newman, supra*, in these matters, and permits the judge (as was done here) to assign to one spouse property of the other spouse in lieu of an award of alimony.[5] *King* v. *King, supra* at 39, and cases cited. The peculiar circumstances and highly charged emotions of the parties here called not only for the exercise of sound discretion but also for some careful creativity in arriving at a fair and reasonable financial settlement. See *Rice* v. *Rice*, 372 Mass. at 401. The record indicates that the judge meticulously considered all the mandatory and discretionary factors, and there is ample evidence to support his comprehensive subsidiary findings. See *Serino* v. *Serino*, 6 Mass. App. Ct. 926 (1978). There is "no evidence that the judge below considered any impermissible factors in deciding to award" the marital home to the wife. *Rice* v. *Rice*, 372 Mass. at 402.

On the evidence the judge could permissibly find that both parties had and would continue to have substantial incomes and that their personal financial assets (notwith-

---

[5] In proceedings under G. L. c. 208, § 34, a trial judge has "discretionary authority *both* to award any or *all* the husband's assets to his wife and to award her alimony" (emphasis supplied). *Rice* v. *Rice*, 372 Mass. at 402.

standing some difficulty in ascertaining the precise amounts) were not insignificant. The judge could, accordingly, consider the parties' respective financial resources, as well as their "difficulty in communicating" and their total inability to "cooperate with each other" and "agree on child rearing," and reasonably conclude that the optimum arrangement for the future would be to preclude all personal interaction and financial transactions between the parties.[6] In these circumstances, we cannot conclude that the judge abused his discretion or committed an error of law in awarding the marital home to the wife and relieving the husband of all alimony and child support payments.[7] See *Angelone* v. *Angelone, supra* at 730-731; *Bahceli* v. *Bahceli, supra.* See also *Topalis* v. *Topalis, supra* at 532 ("Alimony may include an allowance for the wife for the support of the children"); *Klar* v. *Klar*, 322 Mass. 59, 60 (1947). Contrast *Rice* v. *Rice*, 372 Mass. at 403 (improper to consider "extraneous" factors).

2. *Custody.*

The husband argues that the judge erred in awarding sole custody to the wife and in so doing wrongfully presumed that maternal preference was in the children's best interests. It is true that in determining the question of custody "the rights of the parents shall . . . be held to be equal." G. L. c. 208, § 31 (as amended through St. 1977, c. 829, § 12). However, in deciding issues involving custody, the overriding concern of the court must be the promotion of the best interests of the children and their general welfare. *Hersey* v. *Hersey*, 271 Mass. 545, 555 (1930). *Heard* v. *Heard*, 323 Mass. 357, 375-377 (1948). *Clifford* v. *Clifford*, 354 Mass. 545, 548 (1968) ("sole question" is what is best for children's welfare). See *Masters* v. *Craddock*, 4 Mass. App.

---

[6] As will be seen below, this determination is consistent with the determination made by him with respect to custody.

[7] In these circumstances, we thus reject the defendant's argument that "consideration of child support obligations in the division of marital property is an error of law and results in an abuse of discretion." Cf. *Whitney* v. *Whitney*, 325 Mass. 28, 30-31 (1949).

Ct. 426, 428 (1976); *Angelone* v. *Angelone, supra* at 730; *DiRusso* v. *DiRusso, post* 892 (1981). As a corollary to this standard, the Supreme Judicial Court in *Jenkins* v. *Jenkins,* 304 Mass. 248, 250 (1939), added: "In providing for the custody of a minor child, while the feelings and wishes of the parents should not be disregarded, the happiness and the welfare of the child[ren] should be the controlling consideration. It is the duty of the judge to consider the welfare of the child[ren] in reference not merely to the present, but also to the probable future, and it is a subject peculiarly within the discretion of the judge." For a recent restatement of these principles, see *Vilakazi* v. *Maxie,* 371 Mass. 406, 409 (1976).

The judge did not abuse his discretion. He correctly applied these principles in deciding this question, and his conclusions are amply supported by his subsidiary findings, which are founded on the evidence. Moreover, "[t]he opportunity which the judge had to observe and appraise both parents is particularly important in a case of this kind." *Stevens* v. *Stevens,* 337 Mass. 625, 627 (1958). On this record we cannot say that the judge was clearly wrong in awarding sole custody to the wife. See *Smith* v. *Smith,* 361 Mass. 855 (1972); *Clarke* v. *Clarke,* 3 Mass. App. Ct. 736, 737 (1975). Contrast *Bouchard* v. *Bouchard, post* 899 (1981).

Following eight days of trial, the major portion of which was devoted to the question of custody, the judge concluded that, even though the wife "may be irrational in perceiving joint custody as a vehicle whereby her husband can continue to impose his will upon her," in the instant circumstances joint custody would be entirely inappropriate and injurious to the children. The husband does not claim that such "irrational" fears of the wife could cause her to become a "nonfunctional" parent and thus render her unfit.[8] See *Stevens*

---

[8] A determination that the wife was unfit for this reason alone would be dubious as "the comparative emotional health of the parents is only one of several factors which can affect the well being of their children."

v. *Stevens,* 337 Mass. at 627-628; *McMahon* v. *McMahon,* 1 Mass. App. Ct. 647, 649 (1973). Nor did he present any evidence showing that the wife's perception caused "'deleterious effect[s]' on the children and an 'undermining' of the custodial relationship," *Felton* v. *Felton,* 383 Mass. 232, 240 (1981), or that sole custody in him would be in the children's best interests.

The husband does argue, however, that it is most often preferred that both parents participate in the child rearing process and in the major decisions that attach thereto. We agree with the precept that "the law sees a value in 'frequent and continuing contact' of the child[ren] with both . . . parents." *Felton* v. *Felton, supra* at 234, quoting from *In re Marriage of Murga,* 103 Cal. App. 3d 498, 503 (1980), and that maternal preference in determining the best interests of the child is a myopic and illogical stereotype. See generally Developments in the Law, The Constitution and the Family, 93 Harv. L. Rev. 1156, 1333-1345 (1980). However, we agree with the trial judge's observation that in order for joint custody or shared responsibility to work, both parents must be able mutually "to agree on the basic issues in child rearing and want to cooperate in making decisions for [their] children." The "best interests" principle requires that the narrow focus be on the interests of the child. "[P]arents [too often] cannot be relied upon to assert the best interests of the child[ren] adequately because of their conflicting economic and psychological stakes in the outcome" (footnotes omitted). *Id.* at 1347. See Mnookin, Child-Custody Adjudication: Judicial Functions in the Face of Indeterminacy, 39 L. & Contemp. Prob. 226, 254 (Summer, 1975).

Joint custody is synonymous with joint decision making and a common desire to promote the children's best interests. "It is understandable, therefore, that joint custody is encouraged primarily as a voluntary alternative for relative-

---

*Angelone* v. *Angelone,* 9 Mass. App. Ct. at 730. See also Annot., Mental Health of Contesting Parent as Factor in Award of Child Custody, 74 A.L.R.2d 1073 (1960).

ly stable, amicable parents behaving in mature civilized fashion," *Braiman v. Braiman,* 44 N.Y.2d 584, 589-590 (1978), and where their respective concepts of child rearing are equally commensurate with the children's best interests. Children are entitled to the love, companionship and concern of both parents, and they usually are better off if the parents can agree to share in the responsibility of their rearing as well as in physical custody. "Although complete agreement between parents to implement joint custody may not be necessary," in order to be effective "joint custody requires two capable parents with some degree of respect for one another's abilities as parents, together with a willingness and ability to work together to reach results on major decisions in a manner similar to the way married couples make decisions."[9] Taussig & Carpenter, Joint Custody, 56 N.D.L. Rev. 223, 234 (1980). See also Foster & Freed, Joint Custody: A Viable Alternative?, 15 Trial 26 (No 5, 1979). It is difficult, as in the present case, to award joint custody following a divorce traumatized by personal and emotional conflict. The judge had the benefit of testimony from expert witnesses, reports from experts, and proposed findings from a court appointed counsel representing the children and their separate interests. The judge concluded that "joint custody or shared responsibility is an invitation to continued warfare and conflict."[10] The judge found the wife has been the "primary nurturing parent" and "primary caretaker" and that the children have the "strongest bond" with their mother. These factors are highly significant for the welfare of the children, and are thus critical considerations for the judge

---

[9] The trial judge stated that joint custody would be inappropriate where "the parties are not only personally very antagonistic towards each other but also disagree with respect to child rearing both in the major areas such as schooling, medical treatment, religion, education, but more important in the day to day philosophy of discipline and child rearing."

[10] The court in *Braiman* stated further: "As a court ordered arrangement imposed upon already embattled and embittered parents, accusing one another of serious vices and wrongs, [joint custody] can only enhance familial chaos." *Braiman v. Braiman, supra* at 590.

in deciding on a custodial arrangement which minimizes disruption and fosters a healthy environment for the growth and development of the children. Although the husband had had involvement with the child rearing functions and responsibilities, the judge concluded that because the parties have basic fundamental differences in the major areas of child rearing, such as health care, religion and education, as well as in day-to-day decision making and philosophy of discipline, an order providing joint custody would run contrary to the children's happiness and welfare. That determination has ample support in the record.

3. *Visitation.*

We pause merely to touch upon the husband's claim that the judge "cut back so severely on the amount of time that [he] may spend with his children that it now is impossible for him to maintain a meaningful relationship with them." There is no error.

From our above discussion of the record, it should be readily apparent that in view of the circumstances and the personalities involved the judge was justified in reducing the husband's visitation to less than it previously had been under the temporary custody order.[11] See *DiRusso* v. *DiRusso,* supra. "[T]he 'best interests' of the child[ren] are to be promoted, and when the parents are at odds [as here], the attainment of that purpose may involve some limitation of the liberties of one or other of the parents." *Felton* v. *Felton,* supra at 233. See *DiRusso* v. *DiRusso, supra.* Compare *Vilakazi* v. *Maxie,* 371 Mass. at 408-409 (all visitation denied to one parent).

*Judgments affirmed.*

---

[11] We do not think it would serve any useful purpose to recount portions of the evidence from which the judge could reasonably have determined that incidents inconsistent with the best interests of the children (e.g., substandard personal hygiene) occurred during certain extended periods when the husband was exercising his visitation rights under the temporary custody order.