# OPINIONS OF THE JUSTICES.

### OPINION OF THE JUSTICES TO THE SENATE.

*Divorce and Separation,* Child custody. *Parent and Child,* Custody. *Minor,* Custody. *Abuse Prevention. Due Process of Law,* Child custody proceeding, Presumption, Burden of proof, Standard of proof.

This court concluded that the "preponderance of the evidence" standard set forth in certain proposed legislation was sufficient in child custody disputes between parents to create a rebuttable presumption that custody in a parent is not in the best interests of the child, where that parent is shown to have engaged in a pattern or serious incident of "abuse," that is, domestic violence. [1205-1207]

This court concluded that the "preponderance of the evidence" standard set forth in certain proposed legislation, by which a presumption is created that custody in a parent is not in the child's best interests, created a minimal risk of an erroneous deprivation of parental interests, where the presumption would be rebuttable by the same standard, that is, a "preponderance of the evidence." [1207-1208]

This court concluded, in balancing the interests of parents, children, and the State, that the "preponderance of the evidence" standard prescribed by Senate No. 2021 and governing parental custody disputes satisfies the requirements of due process of art. 10 of the Massachusetts Declaration of Rights and the Fourteenth Amendment to the Constitution of the United States. [1208-1209]

This court concluded that the "preponderance of the evidence" standard set forth in certain proposed legislation governing the burden of proof in child custody disputes was consistent with the compelling interest of the State, as parens patriae, to protect the physical and psychological well-being of minors. [1209]

On March 11, 1998, the Justices submitted the following answer to a question propounded to them by the Senate.

To the Honorable the Senate of the Commonwealth of Massachusetts:

The Justices of the Supreme Judicial Court respectfully submit their answer to the question set forth in an order adopted by the Senate on November 13, 1997, and transmitted to the Justices on November 20, 1997. The order indicates that there is pending before the General Court a bill, Senate No. 2021,

entitled, "An Act relative to the consideration of domestic violence in custody and visitation proceedings." A copy of the bill was transmitted with the order. The order recites: "[Senate No. 2021] would establish a presumption against awarding custody of a child to a parent under some circumstances; and . . . would further require that, upon reaching a finding by a preponderance of the evidence [that a parent has engaged in a pattern or serious incident of abuse], the burden of proof shifts to the challenged parent to prove that it is in the best interest of a child to be placed with such parent."

The order also indicates that grave doubt exists as to the constitutionality of the bill, if enacted into law, and requests our opinion on this question:

> "Does the statutory presumption established by [Senate No. 2021] or the resulting shifting of the burden of proof violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution or Article 10 of the Massachusetts Declaration of Rights by impermissibly shifting to the challenged parent the burden of proof relative to custody of a child?"

Senate No. 2021 would amend G. L. c. 208, 209, 209A, and 209C. The portion of Senate No. 2021, § 3, which leads to the question asked of us, states:

> "A probate and family court's finding, by a preponderance of the evidence, that a pattern or serious incident of abuse has occurred shall create a rebuttable presumption that it is not in the best interests of the child to be placed in sole custody, shared legal custody, or shared physical custody with the abusive parent. Said presumption may be rebutted by a preponderance of the evidence that such custody award is in the best interests of the child. For the purposes of this section, 'an abusive parent' shall mean a parent who has committed a pattern of abuse or serious incident of abuse."

Under the due process clause, the "government may only deprive a person of life or of an interest in liberty or property by due process of law." *Opinion of the Justices*, 423 Mass. 1201, 1229 (1996). Thus, the Justices must answer whether the establishment of a rebuttable presumption in custody disputes and the resulting shift in the burden of proof deprives the chal-

lenged parent of a liberty interest or property interest, and, if so, whether the requirements of due process have been satisfied.

The Supreme Judicial Court and the Supreme Court of the United States have recognized that parents have a fundamental interest in their relationships with their children that is constitutionally protected. See *Santosky* v. *Kramer*, 455 U.S. 745, 753 (1982); *Custody of Two Minors*, 396 Mass. 610, 617 (1985), citing *Little* v. *Streater*, 452 U.S. 1, 13 (1981); *Petition of the Dep't of Pub. Welfare to Dispense with Consent to Adoption*, 383 Mass. 573, 587 (1981). This interest is one of the "liberty" interests protected by art. 10 of the Massachusetts Declaration of Rights, and the due process clause of the Fourteenth Amendment to the United States Constitution. See *Dep't of Pub. Welfare* v. *J.K.B.*, 379 Mass. 1, 3 (1979), citing *Quilloin* v. *Walcott*, 434 U.S. 246 (1978). However, parents' interests in their relationships with their children are not absolute, because "[t]he overriding principle in determining [the rights of a parent to custody] must be the best interest of the child." *C.C.* v. *A.B.*, 406 Mass. 679, 691 (1990).

There is a growing national awareness that children who witness or experience domestic violence suffer deep and profound harms. See, e.g., *Custody of Vaughn*, 422 Mass. 590, 599 (1996); Fields, The Impact of Spouse Abuse on Children and Its Relevance in Custody and Visitation Decisions in New York State, 3 Cornell J.L. & Pub. Pol'y 221, 222-234 (1994); Cahn, Civil Images of Battered Women: The Impact of Domestic Violence on Child Custody Decisions, 44 Vand. L. Rev. 1041, 1055-1058 (1991). To better protect children, many States have adopted legislation making it more difficult for an abusive parent to obtain custody of a child in a divorce proceeding. See generally Comment, Protecting New York's Children: An Argument for the Creation of a Rebuttable Presumption Against Awarding a Spouse Abuser Custody of a Child, 60 Alb. L. Rev. 1345 (1997). Eleven States have adopted statutes creating presumptions similar to the one contained in Senate No. 2021.[1] It appears that this court is the first to advise on the constitutionality of such a presumption.

---

[1]"Four of the [eleven] states established presumptions, the other seven created rebuttable presumptions. The state statutes utilize different burdens of proof for establishing domestic violence as well as for rebutting the presumption." (Footnotes omitted.) Comment, Protecting New York's Children: An Argument for the Creation of a Rebuttable Presumption Against Awarding a Spouse Abuser Custody of a Child, 60 Alb. L. Rev. 1345, 1367 (1997). Some

In custody disputes between parents there is no constitutional or statutory entitlement to any particular form of custody. See *Commonwealth* v. *Beals*, 405 Mass. 550, 554 (1989) (both parents have equal rights to custody of their children); *Yannas* v. *Frondistou-Yannas*, 395 Mass. 704, 709 (1985) (neither State nor Federal Constitution favors one custodial arrangement over another); G. L. c. 208, § 31. A parent seeking custody must simply present evidence of facts which demonstrate why such an award of custody serves the child's best interests. If the other parent wishes to obtain custody, that parent must present evidence to show why he or she should be awarded custody instead. The judge weighs the evidence presented and makes a determination as to which parent can best satisfy the child's welfare and happiness. See, e.g., *Rolde* v. *Rolde*, 12 Mass. App. Ct. 398 (1981); *Bahceli* v. *Bahceli*, 10 Mass. App. Ct. 446 (1980); *Angelone* v. *Angelone*, 9 Mass. App. Ct. 728 (1980). Evidence of domestic violence is only one factor of many considered by a judge in making custody determinations.[2]

Senate No. 2021 would change the weight that domestic violence is given in custody determinations. Instead of simply being a factor considered by the judge, it could be a determinative factor. If one parent proves by a preponderance of evidence that the other has engaged in a pattern or incident of serious abuse, then a presumption arises that it is not in the child's best interests to be in the custody of the challenged parent. The chal-

States make no mention of a standard for the presumption to attach, some require only credible evidence, and others require a preponderance of the evidence standard. To rebut the presumption, some States require the abusive parent to participate in special programs that address the underlying issues (e.g., anger management or programs for sexual offenders), and some require clear and convincing evidence that custody with the abusive parent is in the child's best interests. *Id.* See Colo. Rev. Stat. § 14-10-124(1.5)(m) (1997); Del. Code Ann. tit. 13, § 705A (Supp. 1997); Fla. Stat. Ann. § 61.13(2)(a)(2) (West 1997 & Supp. 1998); La. Rev. Stat. Ann. § 9:364(A) (West Supp. 1997); Minn. Stat. Ann. § 518.17(2)(d) (West 1990); N.D. Cent. Code § 14-09-06.2(1)(j) (1991); Okla. Stat. Ann. tit. 10, § 21.1(D) (West Supp. 1998); Tex. Fam. Code Ann. § 153.004 (West 1996); Wash. Rev. Code Ann. § 26.09.191(2) & (3) (West 1997); Wis. Stat. Ann. § 767.24(2)(b)(2)(c) (West 1993 & Supp. 1997); Wyo. Stat. Ann. § 20-2-113(a) (Michie 1997).

[2]Other factors include parental fitness, relative ability, and willingness of each parent to care for child, history as primary care parent, health of parents, health needs of child, lifestyle of parents, sexual conduct of parents, religion, suitability of residence of parent, residence of siblings, and the custodial preferences of the child. C.P. Kindregan, Jr. & M.L. Inker, Family Law and Practice § 47.12 (2d ed. 1996).

lenged parent then has the burden of proving by a preponderance of the evidence, that despite evidence of abuse, it is in the child's best interests to be in his or her custody. Thus, once a parent's abusive conduct is proved, the burden of proof is shifted to the challenged parent to prove that an award of custody to him or her is in the best interests of the child.

In determining whether the presumption and shifting of burden survive constitutional due process, the question is not whether the State may restrict parents' liberty interests in relating with their children, but rather, what standard of proof is constitutionally required for the State to do so. Senate No. 2021 would establish the presumption after proof by a "preponderance of the evidence." Whether this standard survives constitutional muster depends on the value society places on the affected individual's liberty, the significance of the deprivation or restriction, society's interest in avoiding erroneous deprivations or restrictions to that liberty, and the value society places on the State's interest. See *Santosky, supra* at 755-756. Both the Supreme Judicial Court and the Supreme Court of the United States have utilized the analysis contained in *Mathews* v. *Eldridge*, 424 U.S. 319 (1976), to balance these interests.[3] See *Care & Protection of Robert*, 408 Mass. 52, 58-59 (1990); *Spence* v. *Gormley*, 387 Mass. 258, 274-277 (1982). This requires consideration of three distinct factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews* v. *Eldridge, supra* at 335. See *Care & Protection of Robert, supra* at 59; *Commonwealth* v. *Barboza*, 387 Mass. 105, 112, cert. denied, 459 U.S. 1020 (1982). We examine each of the factors to determine whether the presumption created by Senate No. 2021 meets the requirements of due process.

1. *Private interests.* First we must identify the private interests. *Mathews* v. *Eldridge, supra.* Creating a presumption that custody in a parent is not in the best interests of a child

---

[3]*Mathews* v. *Eldridge*, 424 U.S. 319 (1976), involved a worker's claim that termination of his social security benefits violated his constitutional right to due process.

implicates the interest of the parent in his or her relationship with the child, as well as a child's interest in the relationship with his or her family. See *Santosky, supra* at 755-756; *Care & Protection of Robert, supra.* Because the presumption attaches only after the other parent proves by a "preponderance of the evidence" that a pattern or incident of serious abuse has occurred, the presumption also implicates the child's right to be free from abusive or neglectful behavior. See *Care & Protection of Robert, supra* at 61.

Although parents have a fundamental, constitutionally protected interest in their relationships with their children, attainment of the children's best interest may involve some limitation on the liberties of one or the other of the parents. For example, in *Kendall* v. *Kendall*, 426 Mass. 238, 248 (1997), the court concluded that a parent's right to practice religion must be restricted when necessary to promote a child's best interests. See *Felton* v. *Felton*, 383 Mass. 232, 233 (1981). In addition, if there is abuse or neglect, the State may require a partial or complete severance of the parent-child relationship to protect a minor child from serious physical or emotional harm. See *Petition of the Dep't of Pub. Welfare to Dispense with Consent to Adoption, supra* at 587-588. Nevertheless, parents' interests in relating with their children are extremely important, and before the State may permanently deprive any parent of that interest, it should generally be required to meet a standard of proof higher than a preponderance of the evidence. See *Santosky* v. *Kramer, supra* at 764-766; *Petition of the Dep't of Pub. Welfare to Dispense with Consent to Adoption, supra.*

As the court recognized in *Care & Protection of Robert, supra* at 61-62, a child's interest to be with his or her parents fluctuates with the child's interest to be free from abuse and neglect. When there is evidence of abuse or neglect of a family member, a child's interest in relating to his or her family diminishes. *Id.*, citing *Custody of a Minor*, 389 Mass. 755, 766 (1983). To allow a child to experience or witness domestic violence "is a violation of the most basic human right, the most basic condition of civilized society: the right to live in physical security, free from the fear that brute force will determine the conditions of one's daily life." *Custody of Vaughn, supra* at 595. Therefore, the child's interest in being free from such abuse outweighs any interest a child has in family integrity. Because a child's interest in being free from the effects of

domestic violence is extremely significant, proof by a preponderance of the evidence appears to be a sufficient standard to allow the rebuttable presumption to attach in custody disputes between parents.

2. *Risk of error.* Next we must consider the risk of an erroneous deprivation of the private interests through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards. See *Mathews* v. *Eldridge, supra* at 335; *Care & Protection of Robert, supra* at 62-63. The greater the risk of erroneous deprivation, the more important it is to consider additional procedural safeguards such as a more demanding standard of proof. *Id.* See *Santosky* v. *Kramer, supra* at 764-766.

A preponderance of evidence standard creates a greater risk of an erroneous deprivation of custody than a higher standard of proof. However, the presumption created by Senate No. 2021 "may be rebutted by a preponderance of the evidence that [a custody award to the challenged parent] is in the best interests of the child." In *Care & Protection of Robert, supra* at 64, the court concluded that the preponderance standard was sufficient for purposes of restricting a parent's right to custody, in part, because "further proceedings regarding the particular situation [would] be held."[4] The protection afforded by Senate No. 2021 is even greater, because the challenged parent has an opportunity immediately to overcome the presumption based on a preponderance of the evidence.

Another issue of concern is that one parent may make false allegations of abuse to gain an advantage in custody proceedings. The risk of the success of such conduct is greater with a preponderance of the evidence standard than with a stricter standard of proof. However, parents acting in such a manner are clearly not acting in their child's best interests. Therefore, parents who make false allegations of abuse run the great risk that they will lose custody of their children. Cf. *Duro* v. *Duro,* 392 Mass. 574 (1984). See C.P. Kindregan, Jr. & M.L. Inker, Family Law and Practice § 47.12, at 366-367 & n.13 (2d ed. 1996).

---

[4]In *Care & Protection of Robert,* 408 Mass. 52, 61 n.5 (1990), there was some evidence that the deprivation of custody could take up to one year in some cases.

While it is true that a "preponderance of the evidence" standard creates a greater risk of an erroneous deprivation of custody than a stricter standard, any errors which arise can be discovered and corrected through the challenged parent's rebuttal. Because the risk of error is minimal, proving abuse by a preponderance of the evidence prior to the rebuttable presumption arising in custody disputes between parents is appropriate.

3. *The State's interest.* The final factor we must consider is the State's interest in the rebuttable presumption, and the burdens that a more demanding standard of proof would create for the State. See *Mathews* v. *Eldridge, supra* at 335; *Care & Protection of Robert, supra* at 65. The State, as parens patriae, has a "compelling interest in protecting the physical and psychological well-being of minors." *Sable Communications of Cal., Inc.* v. *FCC,* 492 U.S. 115, 126 (1989). See *Adoption of Brooke,* 42 Mass. App. Ct. 680, 684 (1997). It is thought by some that it is not in the best interests of a child to be in the custody of a perpetrator of domestic violence.[5] Thus, the State has a significant interest in protecting a child from residing with a parent who has a history of committing acts of domestic violence, unless it is shown to be in a child's best interests.

A standard of proof stricter than the preponderance of the evidence would be inconsistent with promoting the State's interest. The burden of a stricter standard of proof would fall entirely on the parent alleging abuse. But see *Santosky* v. *Kramer, supra* (burden of stricter standard falls entirely on State). A victim of domestic violence may not have the resources necessary to meet a higher standard of proof. One who commits domestic violence often controls a spouse by threatening to obtain custody

---

[5]There is substantial evidence that children who witness or experience domestic violence suffer "a distinctly grievous kind of harm." *Custody of Vaughn,* 422 Mass. 590, 595 (1996). See Note, Domestic Violence and Custody Litigation: The Need for Statutory Reform, 13 Hofstra L. Rev. 407 (1985). Numerous articles addressing the effects of family violence on children support conclusions that (1) batterers are more likely to abuse their children than the average parent, see Comment, Protecting New York's Children: An Argument for the Creation of a Rebuttable Presumption Against Awarding a Spouse Abuser Custody of a Child, 60 Alb. L. Rev. 1345, 1352 (1997), and studies cited; (2) children exposed to domestic violence suffer both behavioral and developmental harm, see Comment, *supra* at 1351; and (3) that children exposed to domestic violence are more likely to be violent with their spouses or children, see Comment, *supra* at 1352, and articles cited.

if the spouse attempts to leave the relationship, to report abuse to the police, or otherwise to defend him or herself. See Comment, Protecting New York's Children: An Argument for the Creation of a Rebuttable Presumption Against Awarding a Spouse Abuser Custody of a Child, 60 Alb. L. Rev. 1345, 1358 (1997); Note, Domestic Violence and Custody Litigation: The Need for Statutory Reform, 13 Hofstra L. Rev. 407, 426 (1985) (victims of abuse are generally economically dependent on abusers and will often be threatened with custody litigation by abusers if they leave). Because the purpose of Senate No. 2021 is to prevent children from witnessing or experiencing domestic violence, a standard of proof greater than a preponderance of evidence would prevent many victims of abuse from proving the existence of domestic violence at custody proceedings, and a greater number of children could end up in the custody of a perpetrator of domestic violence.

In balancing the interests involved, the logical conclusion is that the "preponderance of the evidence" standard prescribed by Senate No. 2021 satisfies the requirements of due process under the State and Federal Constitutions. The risk of error is greatly outweighed by children's interest in being free of abuse and neglect, and the State's interest in promoting the welfare of its children. Moreover, because Senate No. 2021 only relates to custody disputes between parents, the risk of error is being shared by two individuals with equal interests. The State's interest is promoted only indirectly — through an award of custody to nonabusive parents. Therefore, the Justices conclude in response to the Senate's question, that the rebuttable presumption and resulting shift in the burden of proof established by Senate No. 2021 would not, if enacted into law, contravene that portion of art. 10 which provides that "[e]ach individual of the society has a right to be protected by it in the enjoyment of his life, liberty and property, according to standing laws," or the due process clause of the Fourteenth Amendment.

The answer to the question is, "No."

The foregoing answer and opinion are submitted by the Chief

Justice and the Associate Justices subscribing hereto on the 11th day of March, 1998.

HERBERT P. WILKINS

RUTH I. ABRAMS

NEIL L. LYNCH

JOHN M. GREANEY

CHARLES FRIED

MARGARET H. MARSHALL

RODERICK L. IRELAND