SUPREME JUDICIAL COURT 
 
 IN THE MATTER OF F.A.

 
 Docket:
 SJC-13515
 
 
 Dates:
 April 1, 2024 - September 18, 2024
 
 
 Present:
 Budd, C.J., Gaziano, Kafker, Wendlandt, & Georges, JJ.
 
 
 County:
 Worcester
 

 
 Keywords:
 Mental Health. Practice, Civil, Commitment of mentally ill person, Findings by judge. Due Process of Law, Mental health, Commitment, Substantive rights, Burden of proof. Statute, Construction.
 
 

             Petition for civil commitment filed in the Worcester Division of the District Court Department on April 8, 2020.
            A motion for a buildings and grounds restriction was heard by Janet J. McGuiggan, J.
            The Supreme Judicial Court granted an application for direct appellate review.
            Ilana Hollenberg, Committee for Public Counsel Services, for F.A.
            Patricia J. Reilly, Assistant District Attorney, for the Commonwealth.
            Alex Bou-Rhodes, Tatum A. Pritchard, Steven J. Schwartz, & Jennifer Honig, for Mental Health Legal Advisors Committee & others, amici curiae, submitted a brief.
            BUDD, C.J.  F.A. has been committed involuntarily to State mental health facilities since 1999.  In 2020, after renewing F.A.'s involuntary commitment, a District Court judge ordered F.A. restricted to the buildings and grounds of the facility to which he was committed, pursuant to G. L. c. 123, § 16 (e) (§ 16 [e]).  F.A. now challenges the constitutionality of the buildings and grounds restriction.  For the reasons discussed infra, we reverse and vacate the order.  
            Background.  In 1999, F.A. was found not guilty of committing a sexual offense due to mental illness and was committed involuntarily to a mental health facility pursuant to G. L. c. 123, § 16 (b) (§ 16 [b]).  F.A. has been recommitted annually pursuant to G. L. c. 123, § 16 (c) (§ 16 [c]).[1]  Since 2013, F.A. has been subject to an annually renewable buildings and grounds restriction sought by the Commonwealth and ordered by the court pursuant to § 16 (e).   
            In 2020, F.A. opposed the Commonwealth's motion seeking a buildings and grounds restriction in connection with the Worcester Recovery Center and Hospital's (WRCH's or facility's) petition to extend F.A.'s commitment.  The motion judge renewed F.A.'s commitment and held an evidentiary hearing on the question of the buildings and grounds restriction.  
            At the hearing, the Commonwealth and F.A. both presented expert testimony from clinical psychiatrists, who had treated and evaluated F.A. over several years, as to the necessity of the restriction.  The Commonwealth's expert, Dr. Eric Huttenbach, described WRCH's policies and procedures governing its determination of whether patients receive off-grounds privileges and the mandated precautions undertaken during the exercise of those privileges.  Huttenbach also explained that the facility would conduct an "enhanced clinical review" as part of its "actuarial risk assessment" of the patient's readiness to participate in supervised, off-site trips.  According to Huttenbach, all patients have "one-to-one" supervision while away from the facility and are subject to "ongoing review" to determine whether such privileges remain appropriate.  Huttenbach further noted that, even without a court-ordered buildings and grounds restriction, F.A. would not be considered for such privileges for at least "a year or so," concluding that "based on [F.A.'s] history over the last five, ten years," the buildings and grounds restriction is "really not needed."
            F.A.'s expert witness, Dr. Renee Sorrentino, then confirmed the extensive nature of WRCH's "enhanced clinical reviews."  Sorrentino also testified that, although F.A. should remain committed, F.A. does not require a buildings and grounds restriction, and that his "continuing delusions" do not change her "opinion about whether it . . . would be safe for him to . . . no longer have a buildings and grounds restriction." 
            During the hearing, the judge rejected F.A.'s position that the Commonwealth was required to prove beyond a reasonable doubt that such a restriction was necessary to avoid a substantial and imminent risk of harm to others.  The judge ultimately granted the Commonwealth's motion and ordered F.A. restricted to the facility's buildings and grounds.  Eleven months later, in response to a motion for clarification, the judge issued a written memorandum in which she described § 16 (e) as offering "an all or nothing proposition," and that, absent the court-ordered restriction, the facility potentially could allow F.A. to participate in "unsupervised off grounds" visits.  Thus, the judge explained, "in light of the respondent's mental illness, clinical presentation, and likelihood of serious harm," she "exercise[d]" her "statutorily pr[e]scribed discretion to impose a buildings and grounds restriction." 
            In June 2021, F.A. again opposed the Commonwealth's motion seeking a buildings and grounds restriction in connection with WRCH's petition to extend F.A.'s commitment.  Approximately one month later, a different motion judge ordered F.A. restricted to WRCH's buildings and grounds without an evidentiary hearing.  
            In a consolidated appeal, F.A. challenged both the 2020 and the 2021 decisions.  The Appellate Division of the District Court affirmed the restriction imposed in 2020, but vacated the restriction imposed in 2021, concluding that the failure to hold an evidentiary hearing was a violation of F.A.'s procedural due process rights.  F.A. thereafter appealed from the affirmance of the 2020 order, and we granted his application for direct appellate review.  
            Discussion.[2]  Section 16 (e) provides, in relevant part:
"Any person committed to a facility under [§ 16] may be restricted in his movements to the buildings and grounds of the facility at which he is committed by the court which ordered the commitment.  If such restrictions are ordered, they shall not be removed except with the approval of the court."
F.A. contends that the judge's 2020 § 16 (e) order was unconstitutional because it violated both substantive and procedural due process.  That is, it restricted a fundamental liberty (1) without a finding on the record that such a restriction was narrowly tailored to a compelling government interest, and (2) without affording F.A. adequate procedural safeguards.[3]  We review F.A.'s challenge to the constitutionality of the judge's order under § 16 (e) de novo.  See Commonwealth v. Dufresne, 489 Mass. 195, 200 (2022).  
            1.  Substantive due process.  The right to substantive due process, guaranteed by the Fourteenth Amendment to the United States Constitution and arts. 1, 10, and 12 of the Massachusetts Declaration of Rights, "prohibits governmental conduct that . . . infringes on rights 'implicit in the concept of ordered liberty'" (citation omitted).  Murphy v. Commissioner of Correction, 493 Mass. 170, 176 (2023).  Among such "paradigmatic" fundamental rights within the right to substantive due process is the "right of an individual to be free from physical restraint."  Commonwealth v. Knapp, 441 Mass. 157, 164 (2004).  This right to freedom of movement survives a person's involuntary commitment to prevent the individual from being unduly restrained.  See, e.g., Youngberg v. Romeo, 457 U.S. 307, 316 (1982) (person's "interest" in freedom of movement "must also survive involuntary commitment"); Hopper v. Callahan, 408 Mass. 621, 625-626 (1990) ("involuntarily committed psychiatric patient[s]" have "a clearly established Federal due process right . . . not to be physically restrained unduly").  Where, as here, government action restricts a fundamental right, it must survive strict scrutiny to be constitutional.  Commonwealth v. A.Z., 493 Mass. 427, 427-428 (2024).  That is, the challenged government action must be "narrowly tailored to [further] a compelling government interest" and "be the least restrictive means available to vindicate that interest" (citations omitted).  Id. at 432.
            Here, the Commonwealth contends that the decision satisfied strict scrutiny because a judge may impose a § 16 (e) restriction only after finding beyond a reasonable doubt that a person's commitment is necessary pursuant to § 16 (c).[4]  We disagree.  Section 16 (c) and (e) provide judges with two different means of curtailing freedom of movement and require two distinct analyses to justify the exercise of those powers pursuant to each provision.  Thus, a finding that an involuntary commitment is necessary pursuant to § 16 (c) does not vitiate the need to conduct a further analysis of whether an additional order further restricting a person to the buildings and grounds of the facility pursuant to § 16 (e) also survives strict scrutiny.  Cf. Matter of J.P., 494 Mass.    ,     (2024) (to comport with strict scrutiny, judges must identify causal "nexus" between specific restriction on liberty and compelling governmental interest).  
            Here, although the judge considered F.A.'s "mental illness, clinical presentation, and likelihood of serious harm" in rendering her decision, the judge did not find that imposing a buildings and grounds restriction was the least restrictive means to safeguard public safety (or any other compelling government interest).  See Matter of J.P., 494 Mass. at     ("due process requires a judge to consider less restrictive alternatives in all . . . hearings" where liberty deprivation is at issue [citation omitted]).  In fact, in commenting that § 16 (e) presented an "all or nothing proposition," the judge appeared to believe that the provision required that she either order the mandatory, year-long restriction or take the risk that, without such restriction, the facility might allow F.A. to leave the grounds while unsupervised.  The judge instead should have considered the viability and adequacy of alternative less restrictive measures, including forgoing the imposition of a court-ordered restriction and entrusting the WRCH with managing F.A.'s care, movements, and any off-grounds privileges he may (or may not) enjoy pursuant to its extensive internal protocols.[5]  
            In sum, to comply with a respondent's substantive due process rights, a judge imposing a § 16 (e) restriction must find that a buildings and grounds restriction is necessary to achieve a compelling government interest and that no less restrictive alternatives are available to achieve that end.  See Edwards v. Commonwealth, 488 Mass. 555, 567 (2021) (courts are obligated "to construe the statutory language 'so as to avoid . . . the conclusion that it is unconstitutional'" [citation omitted]).  Because there was no explicit finding of the restriction's necessity or consideration of less restrictive alternatives, the order violated F.A.'s constitutional rights to substantive due process.  
            2.  Procedural due process.  Separately, we conclude that the motion judge violated F.A.'s constitutional rights to procedural due process by imposing a buildings and grounds restriction on F.A. without issuing concomitant findings on the record that doing so was warranted by clear and convincing evidence.  The right to procedural due process, guaranteed by art. 12, as well as the Fourteenth Amendment to the United States Constitution, "requires that a statute or governmental action that has survived substantive due process scrutiny be implemented in a fair manner" (citation omitted).  Garcia v. Commonwealth, 487 Mass. 97, 107 (2021).  In order to comport with due process guarantees, governmental authority to deprive a person of a protected liberty or property interest, such as that conferred by § 16 (e), cannot be exercised without affording that person adequate procedural safeguards.  See Care & Protection of Rashida, 489 Mass. 128, 132-133 (2022), citing Mathews v. Eldridge, 424 U.S. 319, 335 (1976).  
            One such safeguard is applying a "more demanding standard of proof" than a preponderance of the evidence in cases where the "risk of erroneous deprivation" of a protected interest is "greater."  Opinion of the Justices, 427 Mass. 1201, 1207 (1998).  As we repeatedly have affirmed, to restrict one's liberty pursuant to G. L. c. 123, the Commonwealth must provide, at the very least, "clear and convincing evidence" that such restriction is necessary to meet a compelling governmental interest.[6]  Garcia, 487 Mass. at 108 n.17.  
            Here, rather than using the clear and convincing standard, the judge required a lesser quantum of proof -- "substantial evidence" -- to support the § 16 (e) restriction.  Additionally, the judge failed to produce particularized findings to accompany her order until eleven months after the hearing.  See A.Z., 493 Mass. at 434 (to justify liberty restriction, judge must provide, either orally or in writing, record of "evidence he or she credited in support of [his or her] legal conclusion" [citation omitted]).  Accordingly, the decision violated F.A.'s procedural due process rights.[7]  
            Conclusion.  Although the plain text of § 16 (e) does not so indicate, a person who is committed involuntarily may not have his or her movements further restricted pursuant to that provision unless substantive and procedural due process requirements have been met.  That is, a judge must find that the restriction is narrowly tailored to a compelling government interest and that no less restrictive alternatives are available; these findings and the bases therefore must be expressly set forth by the judge.  
            Because the order at issue here deprived F.A. of his constitutional rights to substantive and procedural due process, it is hereby vacated.  
So ordered.  
 
footnotes

 
            [1] Section 16 (c) provides that after a person's initial commitment order under § 16 (b) expires, that person "may be committed for additional one year periods under the provisions of [G. L. c. 123, §§ 7 and 8]."  Sections 7 and 8 detail the procedures by which a person may be committed to a facility if failing "to hospitalize [him or her] would create a likelihood of serious harm by reason of mental illness."  G. L. c. 123, § 7 (a). 
            [2] We reject the Commonwealth's contention that because the 2020 restriction F.A. challenges has expired, the appeal is moot.  Such orders "involving the confinement of mentally ill persons present classic examples of issues that are capable of repetition, yet evading review, which thus warrant appellate review even after the confinement ends."  Garcia v. Commonwealth, 487 Mass. 97, 102 (2021), quoting Pembroke Hosp. v. D.L., 482 Mass. 346, 351 (2019).  See Hashimi v. Kalil, 388 Mass. 607, 609 (1983) (affirming reviewability of orders applicable for one year, especially where "appellate process may take longer than a year").  
            Separately, although the Commonwealth has not contested the timeliness of F.A.'s appeal from the motion judge's order, we note that counsel for F.A. provided a notice of appeal in August 2020 from the tentative order dated July 2020, and filed another notice of appeal from the judge's final order on the 2020 matter issued in June 2021.  See Mass. R. A. P. 4, as appearing in 481 Mass. 1606 (2019) (requiring parties to file notice of appeal within specified period from date of entry of appealable order).
            [3] F.A. also contends that § 16 (e) is unconstitutional on its face.  "A facial challenge to the constitutional validity of a statute is the weakest form of challenge, and the one that is the least likely to succeed," because statutes are "presumed constitutional."  Blixt v. Blixt, 437 Mass. 649, 652 (2002), cert. denied, 537 U.S. 1189 (2003).  Because it is conceivable that a motion judge could constitutionally exercise his or her authority under § 16 (e), provided he or she adheres to the considerations we detail infra, the statutory provision survives F.A.'s facial challenge.  See Gillespie v. Northampton, 460 Mass. 148, 152-153 (2011) (party raising facial challenge "bears the burden of demonstrating . . . that there are no conceivable grounds which could support [the challenged statute's] validity" [quotation and citation omitted]).  See also Commonwealth v. Feliz, 481 Mass. 689, 696 (2019), S.C., 486 Mass. 510 (2020) ("Generally, when the constitutionality of a statute is challenged, the question to be decided is whether the statute is unconstitutional as applied in the particular case" [quotation and citation omitted]). 
            [4] Alternatively, a respondent could waive his or her right to a hearing at which such a determination is made, pursuant to G. L. c. 123, § 6 (b). 
            [5] Any liberty-restricting measures undertaken by WRCH, a Department of Mental Health (DMH) facility, if challenged, similarly could be subject to strict scrutiny analysis.  See, e.g., Hopper, 408 Mass. at 623, 632-633 ("mental health facility operated by [DMH]" accountable for safeguarding patients' due process rights). 
            [6] See, e.g., Matter of a Minor, 484 Mass. 295, 308-311 (2020) (for involuntary commitments of substance-abusing juveniles "to be constitutional as applied, the hearing judge must find, by clear and convincing evidence, that there are no appropriate, less restrictive alternatives"); Commonwealth v. Nassar, 380 Mass. 908, 916 (1980) (involuntary commitment under mental health code must be based on proof beyond reasonable doubt standard).  See also, e.g., Addington v. Texas, 441 U.S. 418, 433 (1979) (standard of proof in indefinite involuntary commitment proceeding must be "equal to or greater than the 'clear and convincing' standard which . . . is required to meet due process guarantees").
            [7] Although here we review only F.A.'s appeal from the order imposed in 2020 after an evidentiary hearing, we note that the Appellate Division of the District Court correctly concluded that the order imposed in 2021 violated F.A.'s procedural due process rights because no evidentiary hearing was held.  See Goldberg v. Kelly, 397 U.S. 254, 263-267 (1970) (hearings are indispensable for due process where person may be deprived of protected interest).